# State of Connecticut *v.* Floyd Williams
## (14150)

Shea, Callahan, Glass, Covello and Berdon, Js.

Argued September 27—decision released November 19, 1991

*Suzanne Zitser,* assistant public defender, with whom, on the brief, was *G. Douglas Nash,* public defender, for the appellant (defendant).

*Frederick W. Fawcett,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Henry J. Lyons,* assistant state's attorney, for the appellee (state).

COVELLO, J. This is the defendant's appeal from his conviction of one count of felony murder in violation of General Statutes § 53a-54c.[1] The issues on appeal

---

[1] General Statutes § 53a-54c provides: "FELONY MURDER. A person is guilty of murder when, acting either alone or with one or more persons, he commits or attempts to commit robbery, burglary, kidnapping, sexual assault in the first degree, sexual assault in the first degree with a firearm, sexual assault in the third degree, sexual assault in the third degree with a firearm, escape in the first degree, or escape in the second degree, and, in the course of and in furtherance of such crime or of flight therefrom, he, or another participant, if any, causes the death of a person other than one of the participants, except that in any prosecution under this section, in which the defendant was not the only participant in the underlying crime, it shall be an affirmative defense that the defendant: (A) Did not commit the homicidal act or in any way solicit, request, command, importune, cause or aid the commission thereof; and (B) was not armed with a deadly weapon, or any dangerous instrument; and (C) had no reasonable

are whether: (1) the state was entitled to a jury instruction on accessorial liability; (2) a television interview of the victim's mother, viewed by two jurors, compromised their ability to continue as fair and impartial jurors; (3) the admission of evidence concerning the defendant's arrest on an unrelated matter constituted evidentiary error; (4) the trial court placed an improper limitation on the cross-examination of a state's witness; (5) the trial court's charge to the jury placed undue emphasis on the defendant's interest in the outcome of the case; and (6) the trial court's jury instruction on the burden of proof in connection with circumstantial evidence constituted harmful error. We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. On August 28, 1989, in the early hours of the morning, the victim, Orville Grant, and Mervin Needham were walking on Sixth Street in Bridgeport when they were approached by the defendant, Floyd Williams, and two other men. The defendant and his two companions all were armed with guns. The defendant forced the victim and Needham to lie on the ground while he rifled Needham's pockets for what turned out to be $5 in cash. The defendant then ordered both men into a nearby yard and again forced them to lie down. After some discussion, all three assailants began shooting. As a result of this assault, Grant died of a gunshot wound to the head.

Just prior to trial, the state filed an amended long form information charging the defendant in a seven count information with violations of the following general statutes: (1) felony murder, General Statutes

ground to believe that any other participant was armed with such a weapon or instrument; and (D) had no reasonable ground to believe that any other participant intended to engage in conduct likely to result in death or serious physical injury."

§ 53a-54c; (2) murder, General Statutes § 53a-54a (a); (3) attempted murder, General Statutes §§ 53a-49 and 53a-54a (a); (4) robbery in the first degree, General Statutes § 53a-134 (a) (2); (5) attempted assault in the first degree, General Statutes §§ 53a-49 and 53a-59 (a) (1); (6) assault in the second degree, General Statutes § 53a-60 (a) (2); and (7) carrying a pistol without a permit, General Statutes § 29-35.[2] On August 21, 1990, a jury found the defendant guilty of the single count of felony murder. The trial court sentenced the defendant to a term of sixty years imprisonment.

I

The defendant first claims that the trial court erred in instructing the jury on the theory of accessorial liability in connection with the robbery that constituted the felony portion of the felony murder charge. The defendant claims that he was charged only as a principal and therefore, the trial court erred in telling the jury that he could be found guilty of felony murder even though they might conclude that he was only an accessory to the alleged acts. We disagree.

"Under Connecticut law, a defendant may be convicted as an accessory even though he was charged only as a principal as long as the evidence presented at trial is sufficient to establish accessorial conduct. *State* v. *Harris,* 198 Conn. 158, 502 A.2d 880 (1985); *State* v. *Ferrara,* 176 Conn. 508, 513 n.2, 408 A.2d 265 (1979); *State* v. *Parham,* 174 Conn. 500, 508, 391 A.2d 148 (1978)." *State* v. *Fleming,* 198 Conn. 255, 268 n.15, 502

---

[2] On July 23, 1990, in apparent response to the defendant's motion for a bill of particulars, the state filed a long form information and stated to the trial court that it provided the defendant with "all the information that he is seeking." While it is arguable that the information did not supply all the information that was requested in the bill of particulars, the defendant has not pursued this issue on appeal as no objection or exception was taken at the time of trial.

A.2d 886, cert. denied, 475 U.S. 1143, 106 S. Ct. 1797, 90 L. Ed. 2d 342 (1986); see *State* v. *Smith,* 212 Conn. 593, 606, 563 A.2d 671 (1989).

While there is no question that the state produced sufficient evidence from which the jury could reasonably have concluded that the defendant was an accessory to the robbery underlying the felony murder, the defendant argues that the circumstances here are identical to those present in *State* v. *Steve,* 208 Conn. 38, 544 A.2d 1179 (1988), and therefore, the trial court should not have instructed the jury that the defendant could be found guilty of felony murder under a theory of accessorial liability. In *Steve,* the state's bill of particulars charged the defendant with robbery and assault in the first degree claiming specifically that he acted as a principal. After the state concluded its case-in-chief, the defendant took the stand in his own defense and testified that a second person had committed the robbery and shot the victim. A second defense witness corroborated the defendant's testimony but added that she had seen the defendant accompany the assailant. The trial court thereafter charged the jury on accessorial liability and the jury found the defendant guilty of both offenses. On appeal, a majority of this court concluded that the defendant was prejudiced by the variance between the trial court's charge to the jury and the state's theory of liability as set forth in the bill of particulars. Specifically, the majority concluded that the defendant relied upon the state's theory that the defendant was the principal in each crime and that the defendant crafted his defense to address the claim that he had acted as the principal. We conclude that *Steve* is distinguishable for two reasons.

First, the amended information in this case charged that "said FLOYD WILLIAMS did commit Robbery, and in the course of and furtherance of such crime *he or another participant in said crime* did cause the death

of ORVILLE GRANT . . . ." (Emphasis added.) A fair reading of the information should have alerted the defendant to the fact that the state was claiming that either he or another participant "in said crime," i.e., the robbery, thereafter caused the death of the victim. The charging document squarely alerted the defendant to the fact that the state was relying on alternative theories of liability and that the evidence to be presented would tend to establish the defendant's guilt either as a principal or as an accessory. Thus, unlike *Steve*, there is no factual basis for a claim that the defendant relied upon an information charging him as a principal in preparing a defense that he was only an accomplice.

Second, prior to introducing any evidence in defense of the state's allegations, defense counsel moved that the court rule on whether the state would be entitled to a jury instruction that would permit a finding of guilt based upon a theory of accessorial liability. The trial court, concluding that the motion was premature, ruled: "I'll make my determination when, when we are discussing the contents of the Court's intended charge." Thus, unlike the situation in *Steve*, the defendant here was specifically put on notice by the trial court, prior to beginning his defense, that the issue of accessorial liability was still in the case. See also *State* v. *Ives*, 172 Conn. 322, 323, 374 A.2d 244 (1977); *State* v. *Raffone*, 161 Conn. 117, 128, 285 A.2d 323 (1971); *State* v. *Cianflone*, 98 Conn. 454, 466, 120 A. 347 (1923); *State* v. *Burns*, 82 Conn. 213, 218–19, 72 A. 1083 (1909); *State* v. *Hamlin*, 47 Conn. 95, 120 (1879).

## II

The defendant next claims that the trial court erred in denying his motion for a new trial based upon the observation by two jurors of an allegedly prejudicial television interview of the victim's mother. On

August 21, 1990, immediately prior to the jury commencing its second day of deliberations, the trial court, having been made aware that such an interview had been broadcast the previous evening, asked the jurors if any of them had seen the newscast. Two jurors recalled seeing small portions of the interview. Neither juror had discussed the interview's content with the other jurors and both stated to the trial court that they did not believe that their observations had compromised their impartiality as jurors. Without objection, the trial court allowed the jurors to resume their deliberations.

On October 5, 1990, the day assigned for the defendant's sentencing, the defendant moved for a new trial based upon these jurors' observation of the allegedly prejudicial television newscast. The trial court viewed a videotape of the newscast and thereafter denied the defendant's motion concluding that its only effect was to "possibly evoke some sympathy" and that "[t]he Court [had] adequately instructed them on that," i.e., "that they were not to allow sympathy to play any part in their deliberations . . . ."

When "the partiality of an individual juror is placed in issue . . . [the] question is not one of mixed law and fact. Rather it is plainly one of historical fact: did a juror swear that he could set aside any opinion he might hold and decide the case on the evidence, and should the juror's protestation of impartiality have been believed." *Patton* v. *Yount,* 467 U.S. 1025, 1036, 104 S. Ct. 2885, 81 L. Ed. 2d 847 (1984). "Thus the question is whether there is fair support in the record for the state court's conclusion that the jurors here would be impartial." *Patton* v. *Yount,* supra, 1038.

In the present instance both jurors described a limited viewing of the television interview. One juror stated that he had viewed only a part of the program and by the time he realized that it even concerned his case,

the interview was over. The other juror was reading the newspaper while watching television and it was his wife who called his attention to the television. He estimated that he had probably seen the last few seconds of the interview. After the trial court had questioned each juror separately, it determined that the incident had not caused them to form any opinion or reach any conclusion about the case. Neither juror discussed the program with his fellow jurors. Further, the trial court personally viewed a videotape of the newscast and concluded, as stated above, that its only effect was to "possibly evoke some sympathy," a matter upon which he had previously instructed the jury. Under the totality of these circumstances, we conclude that "there is fair support in the record for the . . . [trial court's] conclusion that the jurors here would be impartial." *Patton* v. *Yount,* supra, 1036.

## III

The defendant next claims that he was denied his right to a fair trial as the result of a state's witness testifying about the defendant's arrest on an unrelated charge. During the presentation of the state's case, Detective David Silva testified that on October 28, 1989, he assisted in the execution of a search warrant at the home of the defendant's parents. Silva found the defendant hiding in the attic. Silva then testified that there had been at least two arrest warrant applications in connection with the present charges and that he had made six attempts between August 28, 1989, and October 28, 1989, to locate the defendant. On cross-examination, defense counsel brought out that the warrant for the defendant's arrest on the present charges was dated October 30, 1989. Counsel further elicited that the defendant was arrested on October 28, 1989. Defense counsel then asked: "So are you telling the Court then that he was arrested without an arrest warrant?" Silva responded: "He was arrested on a totally

unrelated warrant." There was no request that the answer be stricken nor was there a request for a curative instruction.

On redirect examination of Silva, the state's attorney asked: "And you say he was arrested on a totally unrelated arrest warrant pending against him at that time? Unrelated to the instant case?" Over the defendant's objection, the trial court permitted the witness to respond affirmatively that the defendant was arrested on an unrelated matter. There was no further development of the issue.

"Generally, a party who delves into a particular subject during the examination of a witness cannot object if the opposing party later questions the witness on the same subject. *State* v. *Roy,* 173 Conn. 35, 50, 376 A.2d 391 (1977); McCormick, Evidence (3d Ed. 1984) §§ 32, 57. The party who initiates discussion on the issue is said to have 'opened the door' to rebuttal by the opposing party. Even though the rebuttal evidence would ordinarily be inadmissible on other grounds, the court may, in its discretion, allow it where the party initiating inquiry has made unfair use of the evidence." *State* v. *Graham,* 200 Conn. 9, 13, 509 A.2d 493 (1986).

In pursuing the discrepancy between the October 28 date of the defendant's physical arrest and the October 30 date on the arrest warrant the defendant sought to raise in the juror's minds the clear implication that either: (1) the arrest records were in error; (2) the defendant had been arrested without a warrant; or (3) Silva's recollection of all of the events, including his testimony that the defendant was hiding in the attic, was faulty. When, upon cross-examination, Silva resolved the apparent anomaly by disclosing that there had been a second warrant on an unrelated matter, this subject became an appropriate topic for Silva's redirect testimony even though the material might otherwise have been inadmissible.

## IV

The defendant next claims that the trial court erred in limiting his cross-examination of Needham in connection with his alleged prior inconsistent statement. On December 14, 1989, while testifying at a probable cause hearing to determine whether the defendant should stand trial for felony murder, Needham stated that in giving a statement to the police the day after the incident: "[The police] made me identify [the defendant]."[3] On August 9, 1990, during a hearing on the defendant's motion to suppress Needham's out-of-court identification, Needham repeatedly stated that he was not forced into identifying the defendant.

At trial, the defendant sought to elicit during cross-examination Needham's statement at the probable cause hearing that he was "made" to identify the accused. The trial court sustained the state's objection to the question on the grounds that the question was beyond the scope of the direct examination as there had been no evidence concerning Needham's identification of the defendant at any time prior to his doing so in court at the time of trial.

---

[3] The witness' response occurred in the context of the following colloquy during cross-examination at the probable cause hearing:

"Q. Did you provide the police with information . . . that name that you mentioned; Floyd?

"A. Yeah.

"Q. And after you provided the police officers with the name of Floyd, what, if anything, did they do with that name? . . . In your presence? That you saw with your own eyes and heard with your own ears: what, if anything, did they do with the name, Floyd?

"A. *They made me identify him.*

"Q. They made you identify him. Where?

"A. At the station.

"Q. At the station. How?

"A. They showed me pictures.

"Q. They showed you pictures. How many?

"A. One or two." (Emphasis added.)

On redirect examination the state asked Needham in connection with a statement that he had furnished the police, "[W]ere you at any time promised any favors or any type of treatment? Or were you threatened by them in any shape or form?" Needham answered: "No." On recross-examination the defendant sought to introduce as a prior inconsistent statement a transcript of that portion of Needham's probable cause testimony where he stated that the police "made" him identify the defendant. The trial judge, who had also presided at the probable cause hearing and heard Needham's original testimony, concluded that the word "made" in the context used by Needham did not connote a threat but was simply Needham's way of describing the next step in the police procedures. The trial court therefore concluded that the statement was not inconsistent and sustained the state's objection to the introduction of the transcript.

"While it is clearly proper to attack a witness' credibility by evidence of his materially inconsistent statements; State v. Vega, 163 Conn. 304, 307, 306 A.2d 855 [1972]; State v. Keating, 151 Conn. 592, 597, 200 A.2d 724 [1964], cert. denied sub nom. Joseph v. Connecticut, 379 U.S. 963, 85 S. Ct. 654, 13 L. Ed. 2d 557 [1965]; this can only be done if the court is satisfied that the prior statements are in fact inconsistent. State v. Chesney, 166 Conn. 630, 636, 353 A.2d 783 [cert. denied, 419 U.S. 1004, 95 S. Ct. 324, 42 L. Ed. 2d 280 (1974)]; 3A Wigmore, Evidence (Chadbourn Rev.) § 1040." State v. Reed, 174 Conn. 287, 302–303, 386 A.2d 243 (1978). "In determining whether an inconsistency actually exists, the testimony of the witness as a whole, or the whole impression or effect of what has been said, must be examined." State v. Piskorski, 177 Conn. 677, 710, 419 A.2d 866, cert. denied, 444 U.S. 935, 100 S. Ct. 283, 62 L. Ed. 2d 194 (1979). In examining the context in which Needham made this remark; see footnote 3,

supra; one can reasonably conclude that he was conveying the notion that identifying the defendant through examination of photographs was simply the next step in the police procedures in which he participated, rather than the notion that Needham was forced into identifying the defendant. Such reasoning, within this context, is empirically sound and clearly falls within the broad discretion reposing in the trial court in such instances.

## V

The defendant next claims that the trial court unduly emphasized his interest in the outcome of the case by mentioning it on three separate occasions in the charge to the jury.[4] The defendant took no exception to these portions of the charge; see Practice Book § 315; but now argues that we should review this claim under the bypass rule established in *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973), and *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989).

"We have treated the basic claim that specific mention of the defendant's interest infringes upon his right

---

[4] Specifically, in assessing the defendant's testimony, the trial court stated: "In weighing the testimony of an accused person obviously you should apply the same principles by which the testimony of other witnesses are tested. *And that necessarily involves a consideration of his interest in the outcome of the case.* Now an accused person having taken the witness stand stands before you then like any other witness, and is entitled to the same consideration and must have his testimony measured in the same way as any other witness *including however his interest in the verdict which you are asked to render.*" (Emphasis added.) The trial court further stated: "You are not to disregard the evidence of this accused merely because he was convicted of other crimes. You must weigh the testimony and consider it along with all the other evidence in the case; and you may take into account of course all the evidence that you find to be credible on his part. And the testimony that he has offered to you should be given the same considerations; and you should apply the same test to it as you did with the other witnesses in the course of this trial, *including however, consideration of his interest in the outcome of the case.*" (Emphasis added.)

to a fair trial as falling within the claimed deprivation of a 'fundamental constitutional right' . . . [and] [w]e must, therefore, examine the nuances of language, belatedly relied upon by the defendant, only for the purpose of determining whether they are significant enough to have affected the fairness of his trial." *State* v. *Mack,* 197 Conn. 629, 637, 500 A.2d 1303 (1985). Specifically, the defendant claims here that the trial court's three references to the defendant's interest in the outcome of the case were not "[evenhanded] in referring to the defendant's interest as compared with that of other witnesses." *State* v. *Mack,* supra, 638. This simply is not so. In each instance the trial court prefaced its remarks concerning the defendant's interest in the outcome with comments such as: (1) "[Y]ou should apply the same principles by which the testimony of other witnesses are tested"; (2) the accused "is entitled to the same consideration and must have his testimony measured in the same way as any other witness . . ."; and (3) "you should apply the same test to it as you did with the other witnesses . . . ." The continual emphasis was that the jury was to evaluate the defendant's testimony in the same fashion as the testimony of the other witnesses. We have repeatedly approved the use of similar language and we do not find its use here unduly repetitive or transcending the bounds of evenhandedness. *State* v. *Mack,* supra, 637–38; *State* v. *Avcollie,* 188 Conn. 626, 637, 453 A.2d 418 (1982), cert. denied, 461 U.S. 928, 103 S. Ct. 2088, 77 L. Ed. 2d 299 (1983).

## VI

The defendant finally claims that the trial court erred in its charge to the jury on the standard of proof to be used in evaluating circumstantial evidence. The trial court stated: "[Y]ou can infer one fact from a finding of another fact, only if that first fact is found to be established beyond a reasonable doubt. And also, that

that finding enables you to conclude beyond a reasonable doubt that the second fact also exists . . . . Of course, in passing upon the guilt of an accused person on the basis of circumstantial evidence you must be satisfied beyond a reasonable doubt, first that certain facts or circumstances exist; and second, the existence of those facts or circumstances do beyond a reasonable doubt lead you to the conclusion that the crime was committed by the accused." While we agree that this statement concerning circumstantial evidence was partially in error, its effect was to increase the burden of proof required by the state to prove the defendant guilty and had, therefore, no prejudicial effect in this instance.

"It is axiomatic that the state's burden of proof beyond a reasonable doubt applies to each and every element comprising the offense charged. But this burden of proof does not operate upon each of the many subsidiary, evidentiary, incidental or subordinate facts, as distinguished from elements or ultimate facts, upon which the prosecution may collectively rely to establish a particular element of the crime beyond a reasonable doubt. . . . Where the prosecution must rely upon circumstantial evidence, either in part or in whole, each link in the chain of circumstantial evidence need not be established beyond a reasonable doubt." *State* v. *McDonough,* 205 Conn. 352, 362–63, 533 A.2d 857 (1987), cert. denied, 485 U.S. 906, 108 S. Ct. 1079, 99 L. Ed. 2d 238 (1988).

As worded, the charge in the instant case could have left the jury with the impression that the state must establish each predicate or subsidiary fact beyond a reasonable doubt, thereby substantially increasing the burden of proof imposed upon the state. "The state might well have complained that such a charge imposed a far greater burden upon it than the standard requirement that only the inference of guilt as to each element of

the crime, as distinguished from the totality of the subordinate facts from which the inference is to be drawn, need be proven beyond a reasonable doubt." *State* v. *James,* 211 Conn. 555, 581, 560 A.2d 426 (1989). The defendant argues, however, that the challenged instructions placed an unconstitutional burden on him to prove beyond a reasonable doubt the inferences upon which he relied in his defense. The defendant claims that the trial court misled the jury as to the standard of proof required of him because of the charge's faulty language concerning circumstantial evidence. We disagree for two reasons.

First, the trial court gave its charge upon circumstantial evidence as part of its general charge concerning the state's burden of proof. The trial court stated at that time: "The burden then is on the state to prove an accused guilty of the crime or crimes with which he is charged. An accused does not have to prove his innocence. That means that the state must prove every element necessary to constitute the crime as charged as I shall explain to you in just a moment. It is not enough for the state to prove certain elements because if proof of even one element is lacking you have to find the accused not guilty as to that particular crime charged. The state in other words can sustain the burden resting on it only if the evidence before you establishes the existence of every element constituting the crime charged beyond a reasonable doubt." As between the state and the defendant, this language left no doubt as to who had the burden of establishing the defendant's guilt.

Second, the defendant never relied on circumstantial evidence in crafting his defense. The defendant's theory of the case was that he was present on Sixth Street when the shootings occurred, but he was in no way associated with the individuals who committed the crime. He did not ask the jury to infer anything. He

sought to have the jury believe his direct testimony that he was not the perpetrator. This is not a situation in which an accused who has raised a defense, such as intoxication or insanity, relies upon circumstantial evidence as a basis for drawing inferences that may raise a reasonable doubt as to his guilt. Thus, the erroneous instruction here was simply inapplicable to any claim being made by the defendant.

The judgment is affirmed.

In this opinion the other justices concurred.