STATE OF CONNECTICUT *v.* ORION JONES
(15591)

Foti, Lavery and Schaller, Js.

Argued November 6, 1996—officially released March 18, 1997

*Neal Cone,* assistant public defender, for the appellant (defendant).

*Susann E. Gill,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney,

and *John C. Smriga, Harry Weller,* and *Mary H. Lesser,* assistant state's attorneys, for the appellee (state).

SCHALLER, J. The defendant appeals[1] from the judgment of conviction, rendered after a jury trial, of attempted murder in violation of General Statutes §§ 53a-49 and 53a-54a, kidnapping in the first degree with a firearm in violation of General Statutes § 53a-92a, assault in the first degree in violation of General Statutes § 53a-59 (a) (1), robbery in the first degree in violation of General Statutes § 53a-134 (a) (1), and larceny in the first degree in violation of General Statutes § 53a-122 (a) (3). He claims that the trial court improperly (1) failed to suppress his oral confession, (2) admitted the typewritten document containing his admissions and permitted the document to be referred to at trial as the "defendant's statement," (3) admitted his confession in violation of his due process rights under the state constitution because the police had failed to record the confession electronically, (4) admitted hearsay statements of a police officer, and (5) instructed the jury. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On the morning of May 11, 1993, Rodney Trovarelli left his home for work. As Trovarelli was entering his blue Isuzu Rodeo, which was parked in his driveway, the defendant jumped into the backseat, held a gun to Trovarelli's head and ordered him to drive. After driving a short distance, the defendant ordered Trovarelli to stop at an abandoned house at 51 Green Street in Bridgeport and forced him into the back of the house. The defendant took Trovarelli's wallet, ordered him to lie facedown on the floor and shot him two times in the back of the head. The defendant then fled the house

---

[1] This appeal was taken originally to the Supreme Court. Pursuant to Practice Book § 4023, the Supreme Court transferred the appeal to this court.

and drove away in Trovarelli's vehicle. The defendant drove Trovarelli's vehicle around Bridgeport, and, later that day, parked the vehicle in the driveway of his aunt, Terry Shaw Weaver.

During the morning of May 11, 1993, Trovarelli's supervisor called Linda Trovarelli and told her that her husband had not reported for work. Linda Trovarelli became worried because she had not heard from her husband since he had left early that morning.

Sometime in the afternoon of May 11, 1993, Weaver became suspicious about the fact that the defendant had parked a new Isuzu Rodeo in her driveway. She looked in the vehicle's glove compartment and found the Trovarellis' telephone number. She called the number and Linda Trovarelli answered. Weaver asked her if she was selling a blue jeep or if she used drugs. Linda Trovarelli replied that she did not use drugs and that she owned a blue jeep but that it was not for sale. She then asked Weaver if she knew where Rodney Trovarelli was. Weaver responded that she did not know where he was, but that she saw a young man driving the Trovarellis' vehicle in the Bridgeport area. She warned Linda Trovarelli not to go looking for the vehicle. Later that evening, the Bridgeport police discovered Rodney Trovarelli at 51 Green Street. He was transported to Bridgeport hospital. He survived the shooting, but was severely injured.

The next day, the defendant, at the urging of his cousin, Lyle Hassan Jones (Jones), went to the Bridgeport police station. On the way to the station, Jones spotted Officer Robert Moss of the Bridgeport police, whom he had known for a number of years. Jones spoke briefly with Moss while the defendant waited in the car. After their conversation, Moss called the Bridgeport police station and was told that an injured person had been found in a building on Green Street. Moss then

drove to the police station, and Jones and the defendant followed in their own vehicle.

Upon arriving at the police station, the defendant and Jones met with Joseph Sherbo, the detective assigned to the case. Sherbo met with the defendant and Jones briefly in the lineup room. He then moved the discussion into the police interview room. In the interview room, Sherbo advised the defendant of his *Miranda* rights. The defendant waived his *Miranda* rights and confessed to kidnapping and shooting Rodney Trovarelli and then taking his vehicle.

I

The defendant first claims that the trial court improperly failed to suppress an inculpatory oral statement made by him to the police. He claims that because he refused to sign the typed document that contained his admissions, his earlier actions constituting a knowing, intelligent and voluntary waiver were vitiated. We are not persuaded.

Prior to trial, the defendant filed a motion to suppress the oral confession that he gave to Sherbo at the police station. A suppression hearing was conducted, at which the state presented evidence concerning the circumstances under which the defendant's statement was made. After the hearing, the trial court denied the defendant's motion to suppress the statement. On appeal, the defendant argues that the state failed to meet its burden of establishing that he waived his constitutional privilege against self-incrimination, as required by *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).[2]

---

[2] We note that "[w]e need not determine whether the trial court properly found that the defendant was in custody because we dispose of the defendant's claim on the basis that the trial court's findings that the police gave the defendant his *Miranda* warnings and that the defendant validly waived those rights were not clearly erroneous." *State* v. *Smith*, 42 Conn. App. 41,

"To be valid, a waiver must be voluntary, knowing and intelligent. . . . The state has the burden of proving by a preponderance of the evidence that the defendant voluntarily, knowingly and intelligently waived his *Miranda* rights. . . . Whether a purported waiver satisfies those requirements is a question of fact that depends on the circumstances of the particular case. . . . Although the issue is therefore ultimately factual, our usual deference to fact-finding by the trial court is qualified, on questions of this nature, by the necessity for a scrupulous examination of the record to ascertain whether such a factual finding is supported by substantial evidence." (Citations omitted; internal quotation marks omitted.) *State* v. *Stanley*, 223 Conn. 674, 686, 613 A.2d 788 (1992). A trial court's findings will be reversed only if they are clearly erroneous. Id., 687.

"Whether the defendant has knowingly and intelligently waived his rights under *Miranda* depends in part on the competency of the defendant, or, in other words, on his ability to understand and act upon his constitutional rights. . . . Factors which may be considered by the trial court in determining whether an individual had the capacity to understand the warnings include the defendant's experience with the police and familiarity with the warnings . . . his level of intelligence, including his IQ . . . his age . . . his level of education . . . his vocabulary and ability to read and write in the language in which the warnings were given . . . intoxication . . . his emotional state . . . and the existence of any mental disease, disorder or retardation." (Citations omitted; internal quotation marks omitted.) *State* v. *Toste*, 198 Conn. 573, 580–81, 504 A.2d 1036 (1986).

Our scrupulous review of the record reveals that substantial evidence exists to support the trial court's find-

46, 680 A.2d 1340 (1996). We also note that the defendant does not challenge the voluntariness of his confession.

ings that the defendant knowingly, intelligently and voluntarily waived his *Miranda* rights. Sherbo read the defendant his *Miranda* warnings. The defendant and Sherbo initialed a card on which the *Miranda* warnings were written. Sherbo then showed the defendant a waiver form. The defendant completed and signed the waiver form indicating that he was eighteen years old, that he had completed the eleventh grade, and that he could read and write English. Next, Sherbo read the defendant each of the six paragraphs contained on the waiver form. The defendant placed his initials next to each paragraph to signify that he read and understood the warnings contained therein. The defendant signed his name beneath the sixth paragraph, which is the waiver of rights section. Jones also signed the waiver form as a witness to the waiver of rights procedure. Sherbo testified that the defendant appeared coherent, calm and collected during the entire interview.

After the defendant waived his *Miranda* rights, he made an oral statement in which he admitted stealing Rodney Trovarelli's vehicle, driving him to the house on Green Street, stealing his wallet and shooting him. Sherbo testified that the procedure he used in taking the defendant's statement was one in which he would pose a question to the defendant, type the question, and then type the response. After Sherbo completed typing the defendant's statement, the defendant refused to sign it. The defendant claims that his refusal to sign the statement vitiated his earlier waiver of his *Miranda* rights. "While the refusal to sign a . . . written statement is a 'relevant factor in determining whether an individual knowingly, intelligently, and voluntarily waived his privilege'; *State* v. *Derrico*, [181 Conn. 151, 165, 434 A.2d 356, cert. denied, 449 U.S. 1064, 101 S. Ct. 789, 66 L. Ed. 2d 607 (1980)]; it is not controlling and 'may be outweighed by affirmative conduct indicative of a knowingly and intelligently made decision not to

remain silent.' *State* v. *Harris*, [188 Conn. 574, 581, 452 A.2d 634, cert. denied, 460 U.S. 1089, 103 S. Ct. 1785, 76 L. Ed. 2d 354 (1983)]." *State* v. *Shifflett*, 199 Conn. 718, 733, 508 A.2d 748 (1986). Here, the defendant's conduct clearly indicated that he made a voluntary, knowing and intelligent waiver of his *Miranda* rights. We conclude, therefore, that the trial court properly refused to suppress the defendant's confession.

## II

The defendant next claims that it was improper for the trial court to admit the typewritten document containing the defendant's admissions and to allow the document to be read to the jury at the trial. We disagree.

Our review of the record indicates that substantial evidence exists to support the trial court's findings that the defendant made the statement voluntarily, that the police read him his *Miranda* rights and that the defendant knowingly, intelligently and voluntarily waived his *Miranda* rights. Furthermore, "the fact that the defendant refused to sign the statement . . . does not render his statement inadmissible." *State* v. *Usry*, 205 Conn. 298, 307, 533 A.2d 212 (1987). Accordingly, it was proper for the trial court to admit the inculpatory statement into evidence and to permit it be read to the jury. See *State* v. *Grant*, 33 Conn. App. 647, 658–62, 637 A.2d 1116, cert. denied, 229 Conn. 910, 642 A.2d 1206 (1994).

The defendant also claims that it was improper for the court to allow witnesses to refer to the document as the "defendant's statement" because the document was not "made" by the defendant and signed or otherwise adopted or approved by him. The defendant failed to preserve this claim at trial. He argues that review is proper under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), or as plain error pursuant to Practice Book § 4061, formerly § 4185. We disagree.

"Evidentiary claims are not of constitutional magnitude and are thus not entitled to *Golding* review." *State* v. *Hansen*, 39 Conn. App. 384, 390, 666 A.2d 421, cert. denied, 235 Conn. 928, 667 A.2d 554 (1995). The defendant's claim also does not merit review under the plain error doctrine. See *State* v. *Krzywicki*, 39 Conn. App. 832, 837, 668 A.2d 387 (1995).

## III

The defendant claims next that his right to due process under article first, § 8, of the state constitution was violated because the state was allowed to introduce at trial evidence of his statements to the police when those statements had not been electronically recorded. We reject this claim on the basis of our Supreme Court's opinion in *State* v. *James*, 237 Conn. 390, 428–34, 678 A.2d 1338 (1996), in which the court held that electronic recording of confessions is not a prerequisite to their admissibility at trial under article first, § 8, of the state constitution.

The defendant also claims that it was improper for the trial court to admit his confession because it was not witnessed by someone other than the police officer taking the statement.[3] This claim is unavailing. Our Supreme Court has held that it is not a prerequisite of admissibility that a confession be witnessed by someone other than the police officer taking the statement. *State* v. *James*, supra, 237 Conn. 431; see also *State* v. *Whitaker*, 215 Conn. 739, 757, 578 A.2d 1031 (1990).

## IV

The defendant claims next that trial court improperly admitted hearsay testimony by Moss. That claim con-

---

[3] The record is not entirely clear on how long Jones remained in the room after the interview began. Jones testified that he recalls leaving within the first five minutes because Moss said that he wanted to talk to him. Sherbo does not recall when, if ever, Jones left the interview room.

cerns the events of May 12, 1993, when the defendant and Jones were on their way to the police station. Before they reached the station, Jones saw Moss and stopped to talk with him. Jones asked Moss if a body had been found in a building on Green Street. He told Moss that the defendant had been driving a stolen jeep and had told him that he had shot Rodney Trovarelli in the head and left him in a building on Green Street. He also told Moss that he and the defendant had gone to Green Street to look for Rodney Trovarelli's body but that the body was not there. After this conversation, Moss called the police station and received confirmation that an injured person had been found in a building on Green Street. Subsequently, the defendant and Jones followed Moss to the police station.

At trial, the state asked Moss on direct examination what he did after he spoke with Jones. The defendant objected claiming that Moss' testimony would be inadmissible hearsay.[4] The trial court overruled the defendant's objection. Moss testified that after speaking with Jones, he called the police station to see if he could get verification on the information that Jones had given him and that he asked "if there was a body found in a building on Green Street." The defendant claims that Moss' out-of-court statement is hearsay and that it was improper for the trial court to admit it at trial.

It is axiomatic that an out-of-court statement that is not offered to prove the truth of the matter asserted therein is not hearsay. *State* v. *Alvarez*, 216 Conn. 301, 310–11, 579 A.2d 515 (1990). "Testimony of the contents of a prior oral statement . . . offered only to prove that it was made, is not hearsay." *State* v. *Miller*, 154 Conn. 622, 629, 228 A.2d 136 (1967). Here, Moss' state-

[4] The defendant originally filed a motion in limine objecting to Moss' testimony, but the trial court declined to rule on the motion at that time, and, instead, ruled on the objections as they were raised during the course of examination.

ment was not offered to prove its truth, i.e., that a body was found in a building on Green Street, but was admitted to show that the statement was made during the investigation.

The defendant also argues that, because the jury could infer what Jones had told Moss from what Moss had asked when he called the police station, Moss' statement should be excluded under an implied hearsay theory. We acknowledge that our courts have recognized certain circumstances when, although a witness did not repeat the statements of another person, his or her testimony presented to the jury, by implication, the substance of the other person's statements. See *State* v. *Robinson*, 213 Conn. 243, 567 A.2d 1173 (1989); *In re Jose M.*, 30 Conn. App. 381, 386, 620 A.2d 804 (1993). Even if we were to accept the implied hearsay theory in this case, however, Jones' statements to Moss would not run afoul of the hearsay rule because they were not offered to prove the truth of the facts asserted therein, but merely indicated that a close relative of the defendant had knowledge of the incident before the police had a suspect in the case.

"The trial court has broad discretion in ruling on the admissibility of evidence and only upon a showing of a clear abuse of discretion will this court set aside rulings on evidentiary matters." *State* v. *Siering*, 35 Conn. App. 173, 178, 644 A.2d 958, cert. denied, 231 Conn. 914, 648 A.2d 158 (1994). We conclude that the trial court did not abuse its discretion in admitting Moss' statement.

The defendant also claims that it was improper for the trial court to admit Moss' rebuttal testimony with respect to Jones' hearsay statements. The defendant failed to object to this evidence. He seeks review under *State* v. *Golding*, supra, 213 Conn. 233. Alternatively, he seeks review under the plain error doctrine. Practice

Book § 4061, formerly § 4185. "Evidentiary claims are not of constitutional magnitude and are thus not entitled to *Golding* review." *State* v. *Hansen,* supra, 39 Conn. App. 390. The defendant's claim also does not merit review under the plain error doctrine. See *State* v. *Krzywicki,* supra, 39 Conn. App. 837.

Finally, the defendant claims that the trial court improperly admitted Moss' supplemental report concerning the conversation that he had with Jones. The defendant objected at trial on the ground that the report is "simply redundant" and that there was no reason for its admission under the circumstances. The court admitted the report solely to challenge the credibility of Jones.[5] A trial court has broad discretion in ruling on the admissibility of evidence, and such discretion will not be disturbed on appeal except on a showing of a clear abuse of discretion. *State* v. *Boucino,* 199 Conn. 207, 225, 506 A.2d 125 (1986). We conclude that the trial court did not abuse its discretion in admitting Moss' supplemental report.

V

The defendant next claims that the trial court's instructions were not adequate to prevent inconsistent guilty verdicts on the attempted murder and assault counts because a conscious objective to kill in the

---

[5] The court stated at trial that "[t]he report would be offered to show that the officer filled out a report on May 12 and included specific facts which are contrary to what [Lyle Jones] says the conversation was and that would be offered as to the credibility of Mr. [Jones]. In its final instructions, the court advised the jury that "I just want to give you the following charge concerning statements—the statement of Officer Moss that was introduced into evidence during the rebuttal testimony of Officer Moss—his supplemental [report] was impeaching the credibility of Mr. Hassan Jones' testimony as to what he said to Officer Moss. The other statements which have been introduced into evidence can be considered by you for substantive purposes." The court also included a nonspecific instruction in its final charge advising the jury that inconsistent out-of-court statements of nonparty witnesses could not be used for their truth but only for credibility.

attempted murder count negates a simultaneous intention to cause that victim only serious physical injury. The defendant raises these claims for the first time on appeal. In order to preserve a claim of error properly, the defendant must make a written request to charge or take exception to the jury instructions when they are given by the trial court. *State* v. *Miller*, 186 Conn. 654, 658, 443 A.2d 906 (1982). This court is not bound to review claims of instructional error if the party raising the claim neither submitted a written request to charge, nor excepted to the charge given by the trial court. Practice Book § 852.[6] "The purpose of [§ 852] is to alert the court to any claims of error while there is still an opportunity for correction in order to avoid the economic waste and increased court congestion caused by unnecessary retrials." *State* v. *Packard*, 184 Conn. 258, 281, 439 A.2d 983 (1981).

Acknowledging that his claims are not preserved, the defendant seeks review under *State* v. *Golding*, supra, 213 Conn. 233. This claim is reviewable under *Golding*. See *State* v. *Hinton*, 227 Conn. 301, 313–14, 630 A.2d 593 (1993). We reject his claim, however, on the basis of on our Supreme Court's holding in *State* v. *Williams*, 237 Conn. 748, 679 A.2d 920 (1996), that "under the appropriate circumstances, a defendant can simultaneously intend to cause the death of, and intend to cause serious physical injury to, the same victim." Id., 757.

## VI

The defendant next asserts that the trial court improperly (1) failed to instruct the jury on the role of

---

[6] Practice Book § 852 provides: "An appellate court shall not be bound to consider error as to the giving of, or the failure to give, an instruction unless the matter is covered by a written request to charge or exception has been taken by the party appealing immediately after the charge is delivered. Counsel taking the exception shall state distinctly the matter objected to and the ground of exception. The exception shall be taken out of the hearing of the jury."

the state's information, (2) stated that "the law is made to protect society and innocent persons and not to protect guilty ones"[7] and (3) unduly emphasized his interest in the outcome of the trial. Conceding that these claims were not properly preserved at trial, the defendant asks for review of these issues under *State v. Golding*, supra, 213 Conn. 233.

With regard to the defendant's first two claims, "[d]espite the mention of *Golding* as the standard of review requested for these claims, the defendant's failure to analyze the claims under *Golding*'s four prong test prevents us from reviewing [them]. . . . We are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . This is true even though the defendant requests review of these issues under *Golding*. . . . [W]e conclude that lack of analysis of these claims under the four prongs of *Golding* prevents us from reviewing the issues further." (Citations omitted.) *State v. Ramos*, 36 Conn. App. 831, 838–39, 661 A.2d 606, cert. denied, 235 Conn. 902, 662 A.2d 905 (1995).

We will, however, review the defendant's third claim under *Golding*. See *State v. Williams*, 220 Conn. 385, 396–97, 599 A.2d 1053 (1991). The claim concerns the trial court's instructions "that [the defendant's testimony] necessarily involves a consideration of any interest that he might have in the case. You will consider the importance to him of the outcome of this case and his motive on that account for not telling the truth." The defendant claims that this instruction unduly emphasized his interest in the outcome of the case. We disagree. "We have repeatedly approved the use of similar language." Id., 397. Furthermore, in raising this challenge, the defendant omits the trial court's prefa-

---

[7] We note that the same or similar instruction has been approved by our Supreme Court. *State v. Stanley*, supra, 223 Conn. 695–96.

tory statement that, "[i]n weighing the testimony that the defendant has given you, you should apply the same principles by which the testimony of the other witnesses is tested . . . ." Our review of the instruction as a whole, thus, indicates that the trial court properly instructed the jury that it should consider the defendant's testimony in the same fashion as the testimony of the other witnesses. It also indicates that "the jury was adequately informed that the defendant was presumed innocent until the state proved otherwise and that it was the state's burden to prove him guilty beyond a reasonable doubt." *State* v. *Thomas*, 214 Conn. 118, 119–120, 570 A.2d 1123.

The judgment is affirmed.