[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Date of Sentence: December 2, 1994 Date of Application: December 2, 1994 Date Application Filed: December 2, 1994 Date of Decision: February 26, 2002
Application for review of sentence imposed by the Superior Court, Judicial District of Fairfield at Bridgeport.
Docket No. CR 93-86653.
Lawrence S. Hopkins, Defense Counsel, for Petitioner
John Smirga, Assistant State's Attorney, for the State.
BY THE DIVISION:
Following a trial by jury the petitioner was convicted of the following crimes and sentenced as indicated: CT Page 3514
 kidnapping, 1St degree with a firearm, § 53a-92 20 years attempted murder, § 53a-54a and § 53a-49 20 years assault, 1st degree, § 53a-59 (a)(1) 20 years robbery, 1st degree, § 53a-134 (a)(1) 20 years larceny, 1st degree, § 53a-122 (a)(3) 5 years
The sentences were imposed consecutively for a total effective sentence of 85 years to serve.
The salient facts underlying the convictions are reported in State v.Jones, 44 Conn. App. 476, 478-479, (1997), in which his convictions were affirmed. They are as follows:
On the morning of May 11, 1993, Rodney Trovarelli left his home for work. As Trovarelli was entering his blue Isuzu Rodeo, which was parked in his driveway, the defendant jumped into the backseat, held a gun to Trovarelli's head and ordered him to drive. After driving a short distance, the defendant ordered Trovarelli to stop at an abandoned house at 51 Green Street in Bridgeport and forced him into the back of the house. The defendant took Trovarelli's wallet, ordered him to lie facedown on the floor and shot him two times in the back of the head. The defendant then fled the house and drove away in Trovarelli' s vehicle. The defendant drove Trovarelli "s vehicle around Bridgeport, and, later that day, parked the vehicle in the driveway of his aunt, Terry Shaw Weaver.
During the morning of May 11, 1993, Trovarelli's supervisor called Linda Trovarelli and told her that her husband had not reported for work. Linda Trovarelli became worried because she had not heard from her husband since he had left early that morning.
Sometime in the afternoon of May 11, 1993, Weaver became suspicious about the fact that the defendant had parked a new Isuzu Rodeo in her driveway. She looked in the vehicle's glove compartment and found the Trovarellis' telephone number. She called the number and Linda Trovarelli answered. Weaver asked her if she was selling a blue jeep or if she used drugs. Linda Trovarelli reported that she did not use drugs and that she owned a blue jeep but that it was not for sale. She then asked Weaver if she knew where Rodney Trovarelli was. Weaver responded that she did not know where he was, but that she saw a young man driving the Trovarellis' vehicle in the Bridgeport area. She warned Linda Trovarelli not to go looking for the vehicle. Later that evening, the Bridgeport police discovered Rodney Trovarelli at 51 Green Street. He was transported to Bridgeport hospital. He survived the shooting, but was severely injured. CT Page 3515
In asking for a reduction in the sentence, petitioner's attorney points to Jones' youth — he was 18 years old at the time of the offense, his relatively minor record — which included a capias from Delaware for conspiracy and larceny of more than $500 and he also had an unrelated assault charge pending at the time of his sentencing.
He also points to an unhappy childhood with too much responsibility placed on him by his father, which then became manifested in social as well as personal problems.
In his remarks to the Division Jones expressed remorse and sympathy for the victim and he concedes that his attitude changed after he was sentenced.
The authority of the Review Division is circumscribed by the provisions of § 43-28 of the Practice Book. We can only modify a sentence if it is inappropriate in the light of the nature of the offense, the character of the offender, the protection of the public interest, and the deterrent, rehabilitative, isolative, and denunciatory purposes for which the sentence was intended.
The nature of the offense is at once outrageous and appalling. The victim in this case was a skilled, hard-working machinist, who routinely left his home at around 6:00 a.m. to go to work. Jones could have easily robbed him at gun point in his driveway but, instead kidnapped him, forced him into an abandoned building, shot him in the head, then took his car and wallet, and drove around for a while before abandoning the car. It was some twelve hours later when a passerby heard moans from the victim that the police were called. Jones did not have even a scintilla of concern or remorse to call the police (even anonymously) to tell them where the victim could be found. Even that small gesture of human decency may have lessened the horrible injuries to the victim.
Those injuries included partial paralysis, and traumatic brain injury from a bullet to his brain. The victim was left unable to speak or integrate his thoughts. He could not even be interviewed by the state's attorney, and could not be called as a witness. According to his wife he needed help to get to the bathroom, was blind for several months and needed a wheelchair to get around. He and his wife were put into financial ruin, with medical bills and the costs of maintaining the house going unpaid. At the hearing before this Division, it was reported that she is still driving the same vehicle which her husband was driving in May 1993. A home health care worker stays with the victim a couple of days a week so she can do shopping and take care of errands. The nature of this offense is shocking in its cruelty and the impact on the life of the victim and his wife is crippling. CT Page 3516
The character of the offender can be judged by his statement to the pre-sentence preparer "I would like to express and stress my feelings on the charges that were brought against me. Whatever this court system plans to do with me its fine no matter how much time you could possible give to me, you could never break my spirit. I just have one thought to leave you with, understand that you have the wrong person incarcerated and that this guy may be able to attack anyone, even you!" This statement could reasonably be construed as a veiled threat to public officials involved in his case.
In his remarks to the sentencing court, Jones again proclaimed his innocence, although he had given the police a confession to kidnapping and shooting the victim, and then taking his motor vehicle.
Although he professes to the Review Division that he is now repentant and remorseful, the character of the offender before the sentencing court was defiant and remorseless, and we are reviewing the sentence that was imposed. We do not sit as a Board of Parole to assess an inmates' post-sentencing progress.
The sentencing court commented that public protection and the isolative and denunciatory purposes for imposing a sentencing were a primary consideration, and that rehabilitation did not appear to be a viable consideration. For the reasons outlined in this decision, the sentencing court's priorities were reasonable and appropriate.
We recognize that this is a severe sentence, perhaps unusually so, where the victim was not actually killed, but it is rare that we see a crime so callous in its commission with such a devastating impact to the victim and his family.
Some crimes are so vicious that the perpetrator should fairly forfeit his right to live in an open community for a very lengthy period of time, primarily to protect the good citizens within the community from any further senseless, and random acts committed by such a clearly dangerous person. The sentence is affirmed.
Klaczak
Norko
Miano, J.