## STATE OF CONNECTICUT *v.* STEFAN BAGLEY
## (11596)

FOTI, LAVERY and LANDAU, Js.

Argued February 15—decision released July 12, 1994

*Richard A. Fuchs,* with whom, on the brief, was *Joshua Koskoff,* law student intern, for the appellant (defendant).

*Donald A. Browne,* state's attorney, for the appellee (state).

FOTI, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (3), attempted assault in the first degree in violation of General Statutes §§ 53a-59 (a) (1) and 53a-49, and assault in the second degree in violation of General Statutes § 53a-60 (a) (2).[1]

The defendant claims that the trial court improperly (1) denied his motion for a bill of particulars, (2) restricted cross-examination of a state's witness, and (3) failed to instruct the jury on the guilt of a principal and on the lesser included offense. The defendant also claims prosecutorial misconduct and failure to disclose exculpatory material. We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. On August 14, 1991, at approximately 2 a.m., the victim, Demond Braswell, age sixteen, left his apartment at Father Panik Village in Bridgeport. He, along with four others, planned to go to a local store to buy beer and food. As the five left building sixteen they split into two groups. The victim and two companions, Tremayne O'Brien and Maunick Braswell, proceeded between building sixteen and building twenty, while the others proceeded in the opposite direction along Crescent Avenue.

---

[1] The defendant was found guilty of attempted assault in the first degree as a lesser included offense of the charge of attempted murder. General Statutes §§ 53a-49 and 53a-54a (a). The defendant was originally also charged with carrying a pistol on his person without a permit in violation of General Statutes § 29-35 (a); the court granted the defendant's oral motion to strike this count.

As the three walked, they observed Jacob Crump standing in a doorway to their left at the south corner of building sixteen, and the defendant Stefan Bagley, standing to their right at the end of building twenty. The defendant, who was carrying a long gun, stepped forward and said, "Freeze, don't move." Maunick Braswell immediately ran ahead, and the victim and O'Brien retreated back toward building sixteen. The defendant and Crump pursued the two retreating men and fired at them. O'Brien was struck twice, once in the left leg and once in the right thigh. The victim and O'Brien managed to reenter the building and more shots were fired therein. They returned to their apartment to seek assistance. The victim had been shot once in the upper abdomen, and later died as a result. O'Brien was treated and released.

The victim's fatal wound was caused by a 10 millimeter copper jacketed bullet. Three 10 millimeter bullet casings were recovered from the area to the south of building sixteen, between the two buildings. Three .45 caliber bullet casings were found adjacent to the south end of building twenty, and two additional casings were found in the stairway leading to the Braswell apartment.

## I

The defendant was charged by long form information with manslaughter in the first degree[2] as to Demond Braswell and attempted murder and assault in the second degree as to O'Brien.[3] The defendant filed

[2] The defendant had originally been charged with the murder of Demond Braswell, but after a probable cause hearing, the charge was reduced to manslaughter.

[3] The relevant portion of the state's substituted information provided: "On 14th day of August 1991, at or about 2:41 a.m. between building 16, and building 20, Father Panik Village, Bridgeport, the said STEFAN BAGLEY, under circumstances evincing an extreme indifference to human life, recklessly engaged in conduct which created a grave risk of death to

a motion for a bill of particulars[4] pursuant to Practice Book § 830 et seq., requesting that the court order the state to indicate, as to each count of the information, whether the defendant was "being charged as a principal or as an accessory pursuant to § 53a-8 of the Connecticut General Statutes." The state objected and argued that it could not make that designation. The court denied the defendant's motion.

Following the completion of the state's evidence, the defendant renewed his request for a bill of particulars and moved for a judgment of acquittal on the charge alleging that he had committed manslaughter as a principal. His motions were denied. In its final argument, the state conceded that the evidence was not sufficient to demonstrate that the defendant had fired the fatal shot, and, therefore, that it was proceeding only on the theory of accessorial liability with regard to the manslaughter charge. The court, accordingly, instructed the jury only on accessorial liability on that charge.

The denial of a motion for a bill of particulars is within the sound discretion of the trial court.[5] *State* v. *Laracuente,* 205 Conn. 515, 519, 534 A.2d 882 (1987), cert. denied, 485 U.S. 1036, 108 S. Ct. 1598, 99 L. Ed. 2d 913 (1988). It will be overturned only upon a clear showing of prejudice to the defendant. *State* v. *Spigarolo,* 210 Conn. 359, 385, 556 A.2d 112, cert. denied, 493 U.S. 933, 110 S. Ct. 322, 107 L. Ed. 2d 312 (1989). In order to prevail, a defendant must show that he was

one DEMOND BRASWELL and thereby caused the death of the said DEMOND BRASWELL, in violation of Section 53a-55 (a) (3) of the Connecticut General Statutes."

[4] The defendant had also previously filed a motion for a bill of particulars after the state filed its long form information. That earlier motion is not part of the defendant's claim.

[5] Discretion imports more than leeway in decision making. It implies a legal prudence and sagacity to be exercised in conformity with the spirit of the law and in a manner to serve and not to impede the ends of substantive justice. *State* v. *Bergin,* 214 Conn. 657, 683, 574 A.2d 164 (1990).

prejudiced in his defense on the merits and that substantial injustice was done to him because of the language of the information. *State* v. *Kyles,* 221 Conn. 643, 653, 607 A.2d 355 (1992).

We agree that a defendant has a constitutional right to be informed of the nature and cause of the charges against him with sufficient precision to enable him to meet them at trial. *State* v. *Spigarolo,* supra, 210 Conn. 381. We cannot agree with the defendant, however, that the information here was too vague and indefinite to allow him to prepare his defense adequately and to avoid surprise at trial, thereby entitling him to a bill of particulars.[6]

It is well established in this state that there is no crime of being an accessory. *State* v. *Foster,* 202 Conn. 520, 528, 522 A.2d 277 (1987). Rather, the accessory statute[7] merely provides an alternative theory under which liability for the underlying substantive crime may be proved. *State* v. *Harris,* 198 Conn. 158, 163, 502 A.2d 880 (1985). There is no practical significance in the labels "accessory" and "principal" in determining criminal liability. *State* v. *Smith,* 212 Conn. 593, 606, 563 A.2d 671 (1989). A defendant may be convicted as an accessory, even if charged only as a principal, as long as the evidence presented at trial was sufficient to establish accessorial conduct. *State* v. *Williams,* 220 Conn. 385, 388, 599 A.2d 1053 (1991); *State* v. *Gamble,* 27 Conn. App. 1, 10, 604 A.2d 366, cert. denied, 222 Conn. 901, 606 A.2d 1329 (1992).

If a bill of particulars is filed alleging that the defendant committed the crime as a principal, the jury may

---

[6] The function of a bill of particulars is to enable the defendant to obtain a more precise statement of the offense charged in the information in order to prepare a defense. *State* v. *Stepney,* 191 Conn. 233, 240, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772 (1984).

[7] General Statutes § 53a-8.

not be charged on accessorial liability. *State* v. *Steve,* 208 Conn. 38, 45–46, 544 A.2d 1179 (1988). The jury may be so instructed, however, if the defendant is alerted by the charging instrument that the state will rely on alternative theories of liability or if the court specifically puts the defendant on notice that the issue of accessorial liability remains in the case. *State* v. *Williams,* supra, 220 Conn. 390.

In this case, it was alleged that two people were shooting at two other individuals. These facts raise the possibility of principal or accessorial liability for each shooter's participation in each of the two assaults. Under these circumstances, the court cannot be said to have abused its discretion in refusing to require the prosecution to specify the defendant's exact participation in each of the assaults.

Further, the defendant has not demonstrated that he was prejudiced in his defense on the merits.[8] The defendant did not claim surprise at trial, or request a continuance to respond to any unanticipated evidence. He was aware of the state's proposed evidence and witnesses. We apply the principle that every reasonable presumption should be given in favor of the correctness of the court's ruling. *State* v. *Davis,* 29 Conn. App. 801, 806, 618 A.2d 557 (1993), rev'd on other grounds, 229 Conn. 285, 641 A.2d 370 (1994). Accordingly, we must conclude that the trial court did not abuse its discretion in denying the defendant's motion for a bill of particulars.

## II

The defendant next claims that the trial court improperly restricted cross-examination of one of the state's witnesses. During a probable cause hearing on Octo-

---

[8] The defendant did not testify in this matter. He suggests that he might have elected to testify had he been charged only as an accessory. We cannot speculate on this point in reaching the conclusion that he was prejudiced.

ber 11, 1991, defense counsel cross-examined O'Brien, a witness for the state, regarding the extent of his knowledge of the court system, and his prior arrests, pending charges, any pending violations of probation, any past convictions and future court dates.

On February 11, 1992, the state filed a motion in limine seeking to preclude the defendant from impeaching O'Brien by evidence or questions of his prior arrest or arrests, his participation in a pretrial accelerated rehabilitation program or his knowledge of the court system or whether he had previously been in court. The state also filed a motion in limine on February 18, 1992, to preclude the defendant from introducing evidence from two other witnesses that a toxicological analysis of blood secured from the decedent Braswell was positive for cocaine. The court granted these motions.

Following the state's direct examination, the defendant conducted a lengthy and thorough cross-examination of O'Brien spanning seventy-three pages of transcript. During an offer of proof in the absence of the jury, the witness testified that he had no felony convictions, no criminal charges pending, and that he had previously been granted accelerated rehabilitation for a charge of larceny in the second degree. The defendant was permitted to question O'Brien's participation in the larceny as a prior act of misconduct.[9]

The defendant argues that "the cumulative effect of the trial court's decisions regarding the in limine motions effectively precluded the defendant from cross-examination of the state's key witness." The defendant has not complied with the requirements of Prac-

[9] In the earlier ruling on the motion in limine, the court specifically noted: "The questions as to prior acts involving character trait or veracity are admissible. Larceny would be one involving character trait generally, and I would allow that question."

tice Book § 4065 (d) (3).[10] His brief contains no specific questions, objections, grounds for objections, the claimed ground of admissibility, or evidentiary rulings by the court, that allow for a review of this claim. "When raising evidentiary issues on appeal, all briefs should identify clearly what evidence was excluded or admitted, where the trial counsel objected and preserved his rights and why there was error." *Aspiazu* v. *Orgera,* 205 Conn. 623, 636–37 n.5, 535 A.2d 338 (1987). The mere assertion in a brief that the evidence was improperly excluded, coupled with transcript page references, will not be sufficient. *State* v. *Russell,* 29 Conn. App. 59, 63, 612 A.2d 809, cert. denied, 224 Conn. 908, 615 A.2d 1050 (1992). It has long been our strong policy that if evidentiary rulings claimed to be improper are to be reviewed by this court, they must be set forth in the briefs as required and outlined by the rules of practice. Id.; *State* v. *Siller,* 12 Conn. App. 395, 402, 530 A.2d 1106, cert. denied, 205 Conn. 811, 532 A.2d 586 (1987).

We decline to review this claim.

### III

Finally, the defendant alleges that the trial court improperly instructed the jury by failing to charge (1) on the necessity of proving beyond a reasonable doubt the guilt of the principal as a prerequisite to convicting the defendant as an accessory, and (2) on the

---

[10] Practice Book § 4065 (d) (3) provides in pertinent part: "When error is claimed in any other ruling in a court or jury case, the brief or appendix shall include, where appropriate . . . the question or offer of exhibit; the objection and the ground on which it was based; the ground on which the evidence was claimed to be admissible; the answer, if any; the ruling; and any exception. When the basis of the ruling cannot be understood without a knowledge of the evidence or proceeding which preceded or followed the ruling, a brief narrative or verbatim statement of the evidence or proceeding should be made. A verbatim excerpt from the transcript should not be used if a narrative statement will suffice. . . ."

lesser included offense of attempted assault in the second degree.

A

The defendant filed a request to charge that asked the court, inter alia, to charge the jury that it "must first find beyond a reasonable doubt that Jay Crump was the principal."[11] General Statutes § 53a-8 (a) provides: "A person, acting with the mental state required for commission of an offense, who . . . intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

The trial court in a criminal proceeding is under no duty to charge in the identical language requested if its charge is accurate, adequate, and, in substance, properly includes material portions of the requested charge. *State* v. *Pinnock*, 220 Conn. 765, 789, 601 A.2d 521 (1992). The test is whether the charge as a whole presents the case to the jury so that no injustice will result; *State* v. *Campbell*, 225 Conn. 650, 661, 626 A.2d 287 (1993); and whether the court's instruction properly covered the substance of the written request. *State* v. *Allen*, 216 Conn. 367, 387, 579 A.2d 1066 (1990).

The defendant cannot point to a Connecticut case requiring that a principal be tried, convicted or even identified, before the defendant could be convicted for accessorial criminal responsibility. In fact, our Supreme

---

[11] The defendant requested the following charge: "To convict this defendant, Stefan Bagley, on an accessorial theory you must find that the defendant was an accessory to the underlying crimes of manslaughter in the first degree, assault in the first degree, and attempted murder. Accordingly, you must first find, beyond a reasonable doubt, that Jay Crump was the principal. If you so find, then you must find that the accused intended both to aid the principal, Jay Crump, *and* that he intended to commit the underlying felonies of manslaughter first, assault first and attempted murder." (Emphasis in original.)

Court, in dealing with a predecessor to § 53a-8 (§ 54-196), indicated that a conviction of a principal was not a prerequisite. *State* v. *Wakefield*, 88 Conn. 164, 175, 90 A. 230 (1914); see also General Statutes § 53a-9.

The defendant agrees that the state "need not apprehend, try, convict or even name a principal in its case against an accessory." He posits, however, that "[p]roof that some principal committed the crime that [the] defendant allegedly aided and abetted . . . is an essential element of the crime of aiding and abetting." Therefore, he argues, the court must instruct the jury that it must find, beyond a reasonable doubt, that the crime was committed by a principal before the defendant can be convicted as an accessory.

The trial court instructed, pursuant to § 53a-8, that the burden was on the state to prove beyond a reasonable doubt that the defendant possessed the criminal intent for each of the substantive crimes, that he intended to aid a principal, and that he did intentionally help or aid that person in the commission of each crime alleged. The court instructed that "[e]veryone is a party to a crime who actually commits it, or who does some act forming part of it, or who assists in its actual commission" and also that "where the defendant is an accessory by aiding in the commission of the crime, he must have the intent to aid the principal perpetrator of the crime. That is, he must have the intent to aid the other person in his actual commission of the crime."

Thereafter, the court instructed: "If any person or persons committed an offense charged, and the defendant was an accessory as I have explained that term to you, legally it is just as if he, himself, committed the crime." The court also instructed: "In order to find the defendant, Stefan Bagley, guilty of the crime of manslaughter in the first degree on the theory of accessorial

liability, or as an accessory to this crime, which I have just defined for you, you must find proven beyond a reasonable doubt three things: one, that the defendant had the mental state required for the commission of manslaughter in the first degree—and we are now talking about the defendant, meaning Mr. Bagley—that his conduct must have evinced or demonstrated an extreme indifference to human life and was reckless, in that it created a grave risk of death to another; two, that the defendant intentionally aided the other person, Jay Crump, in the commission of the crime; and three, that acting with that mental state, he helped or assisted Crump in the commission of that crime."

Our review of the charge as a whole leads us to conclude that it was adequate and proper on accessorial liability as it related to the charge of manslaughter in the first degree. We cannot conclude that the trial court improperly failed to instruct the jury, as requested by the defendant, that as a prerequisite the state had the burden of proving beyond a reasonable doubt that Crump was the principal and that this constituted an essential element of the crime.

B

The defendant also claims that the trial court improperly failed to instruct on the lesser included offense of attempted assault in the second degree. The defendant requested that the trial court instruct the jury as to attempted assault in the second degree in violation of General Statutes §§ 53a-49 and 53a-60,[12] as a lesser

---

[12] The defendant's supplemental request to charge as pertinent is as follows: "If you find that the State has also not proven beyond a reasonable doubt any of the elements or all of the elements of attempted assault in the first degree, subsections (1) and (3), as I have just defined them for you, then you may consider whether or not the defendant is guilty of attempted assault in the second degree, in violation of Connecticut General Statutes Section 53a-60, subsections (1), (2), and (3).

"Assault in the second degree, subsection (1) is as follows: 'A person is guilty of assault in the second degree, when with intent to cause serious

included offense of attempted murder and its lesser included offense of attempted assault in the first degree. The court did not do so and the jury returned a verdict of guilty of attempted assault in the first degree.

The state argues that error, if any, in the court's failure to instruct on this lesser included offense is harmless error in view of the jury's verdict of guilty to the greater offense of attempted assault in the first degree. The state argues that our law requires the jury to agree unanimously on the defendant's guilt or innocence under a charge before considering, if necessary, a lesser included offense. *State* v. *Sawyer*, 227 Conn. 566, 579, 630 A.2d 1064 (1993). The state concludes, therefore, that if the court fails to charge on a requested lesser included offense that would have been warranted under the evidence of the case, and the jury convicts on the greater, it is harmless error because the jury never would have reached the lesser even had the instruction been given. Basically, the state's argument, if adopted, would result in the court's never being required to give a requested and warranted lesser included offense charge. If the defendant was convicted of the greater offense, it would be harmless error not to have given

physical injury to another person, he causes such injury to such person or to a third person.'

"Assault in the second degree, subsection (2), is as follows: 'A person is guilty of assault in the second degree when, with intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument.'

"Assault in the second degree subsection (3), is as follows: 'A person is guilty of assault in the second degree when he recklessly causes serious physical injury to another person by means of a deadly weapon or a dangerous instrument. . . .'

"Testimony during the course of this trial from Dr. Garvey of Bridgeport Hospital, that the wounds sustained by Tremayne O'Brien were not of a life threatening nature or of a serious nature. Therefore, the jury may infer the shots fired at Tremayne O'Brien were not fired with an intent to kill. The first count alleges recklessness."

the instruction on the lesser offense, and if acquitted of the greater, then the defendant would have benefited from the lack of instruction given on the lesser.

The law in Connecticut is clear. The defendant is entitled to a warranted instruction on a lesser included offense, and a refusal to so charge cannot be held harmless merely because the defendant was convicted of a greater offense. *State* v. *Hall,* 213 Conn. 579, 588, 569 A.2d 534 (1990); *State* v. *Monte,* 131 Conn. 134, 137, 38 A.2d 434 (1944); see also *State* v. *Sawyer,* 29 Conn. App. 68, 89, 614 A.2d 471 (1992) (*Foti, J.,* dissenting), rev'd, 227 Conn. 566, 630 A.2d 1064 (1993). Unlike the court in *Sawyer,* but like that in *Monte,* the court in this case refused to give a warranted instruction on a lesser included offense. Although a unanimous determination of guilty precludes the jury from proceeding to any lesser included offense; *State* v. *Sawyer,* supra, 579; if a warranted instruction on a lesser included offense was not given, the instruction is improper. *State* v. *Hall,* supra, 588.

The state also argues that the defendant was not entitled to an instruction on attempted assault in the second degree because the request fails to satisfy the four prerequisites of *State* v. *Whistnant,* 179 Conn. 576, 588, 427 A.2d 414 (1980). "A defendant is entitled to an instruction on a lesser offense if, and only if, the following conditions are met: (1) an appropriate instruction is requested by either the state or the defendant; (2) it is not possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser; (3) there is some evidence, introduced by either the state or the defendant, or by a combination of their proofs, which justifies conviction of the lesser offense; and (4) the proof on the element or elements which differentiate the lesser offense charged is sufficiently in dis-

pute to permit the jury consistently to find the defendant innocent of the greater offense but guilty of the lesser." Id.[13]

"In considering whether the defendant has satisfied the requirements set forth in *State* v. *Whistnant,* supra, [588] we view the evidence in the light most favorable to the defendant's request for a charge on the lesser included offense. *State* v. *Montanez,* 219 Conn. 16, 22–23, 592 A.2d 149 (1991). . . . The jury's role as fact-finder is so central to our jurisprudence that, in close cases, the trial court should generally opt in favor of giving an instruction on a lesser included offense, if it is requested. . . . Otherwise the defendant would lose the right to have the jury pass upon every factual issue fairly presented by the evidence." (Citations omitted; internal quotation marks omitted.) *State* v. *Ray,* 228 Conn. 147, 154, 635 A.2d 777 (1993). We must conclude that the trial court's failure to give the requested instruction is improper if we cannot exclude, as a matter of law, the possibility that the defendant is guilty only of the lesser offense. Id., 155; *State* v. *Falby,* 187 Conn. 6, 30, 444 A.2d 213 (1982).

We need spend little time on the first two conditions of *Whistnant.* The defendant appropriately requested an instruction in compliance with the standards set forth in *State* v. *McIntosh,* 199 Conn. 155, 158–61, 506 A.2d 104 (1986) (discussing former Practice Book § 852 "Request for Instructions" in context of *Whistnant* analysis). The state agrees that the only element that would distinguish assault in the first degree, General Statutes § 53a-59 (a) (1), and assault in the second degree, General Statutes § 53a-60 (a) (2), under the circumstances

[13] "Although there is no constitutional right to have a jury consider possible lesser included offenses, Connecticut law entitles a defendant to a lesser included offense charge if his request satisfies the four requirements set forth in *State* v. *Whistnant,* [supra, 179 Conn. 588]." *State* v. *Crafts,* 226 Conn. 237, 250, 627 A.2d 877 (1993).

as they exist here, is whether the defendant intended to cause either serious physical injury or only physical injury.

The propriety of the defendant's request turns on whether he has demonstrated the third and fourth conditions of *Whistnant*. The state argues that the evidence did not justify a conviction on the lesser offense, and that proof of the difference between the two offenses was not sufficiently in dispute. There must be sufficient evidence, introduced by either the state or the defendant, or by a combination of their proofs to justify a finding of guilt on the lesser offense. *State* v. *Rasmussen,* 225 Conn. 55, 67–68, 621 A.2d 728 (1993). If, on the basis of the evidence presented at trial, the jury could reasonably have found that the defendant intended to cause physical injury, but not serious physical injury, then the defendant was entitled to the charge requested.

The evidence to which the defendant points in support of his contention was introduced by the state on its direct examination of Richard Garvey, the attending physician in the emergency room at Bridgeport Hospital. Garvey testified that the puncture wound to O'Brien was neither life threatening nor constituted a "serious impairment" of O'Brien's health. On cross-examination, Garvey also testified that O'Brien was admitted to the hospital at approximately 3:15 a.m. and discharged at about 5:05 a.m.

The defendant argues that because the injury was not serious, the jury was free to infer that the shots fired at O'Brien were not fired with the intent to kill, or to cause serious physical injury, but instead were fired with the intent to cause only physical injury. This argument ignores the fact that the defendant was specifically charged in count three of the information, filed February 24, 1992, with assault in the second degree;

General Statutes § 53a-60 (a) (2); that "with intent to cause physical injury to one Tremayne O'Brien, [he] did cause physical injury to [O'Brien] with a deadly weapon."

To determine what constitutes a lesser included offense of the offense charged, we must first examine the statutes and the information. *State* v. *Troynack,* 174 Conn. 89, 96–97, 384 A.2d 326 (1977). The plain language of the charging document alleges in count two that the defendant had the "intent to cause the death of . . . O'Brien" in the crime of attempted murder.[14] The trial court recognized that if it granted the defendant's request to instruct, it would permit the jury to convict the defendant on both attempted assault and assault in the second degree. The court commented, "[O]n this particular information . . . the only way the defendant can be found guilty of assault in the second degree, [is] if the specific language within the third count is proved. It's the court's view, in light of that, [that] it would be inappropriate to charge . . . on attempt to commit assault in the second degree under the second count. It would also appear to the court that the defendant . . . is benefiting if there is only one possible way that he can be found guilty of assault in the second degree, and that is in the form of the information set forth in the third count."

---

[14] The information charged in pertinent part: "STATE'S ATTORNEY FURTHER ACCUSES the said STEFAN BAGLEY with the crime of ATTEMPTED MURDER and charges that . . . the said STEFAN BAGLEY, with the intent to cause the death of one TREMAYNE O'BRIEN, did shoot at, and attempt to cause the death of the said TREMAYNE O'BRIEN, in violation of Section 53a-49 and Section 53a-54a (a) of the Connecticut General Statutes.

"AND SAID STATE'S ATTORNEY FURTHER ACCUSES the said STEFAN BAGLEY with the crime of ASSAULT IN THE SECOND DEGREE and charges that . . . the said STEFAN BAGLEY, with intent to cause physical injury to one TREMAYNE O'BRIEN, did cause physical injury to the said TREMAYNE O'BRIEN, with a deadly weapon, in violation of Section 53a-60 (a) (2) of the Connecticut General Statutes."

Although factual consistency in the verdict is not necessary; *State* v. *Stevens,* 178 Conn. 649, 653, 425 A.2d 104 (1979); verdicts may not be inconsistent as a matter of law or based on a legal impossibility. *State* v. *Hinton,* 227 Conn. 301, 313, 630 A.2d 593 (1993). Verdicts are legally inconsistent if "the existence of the essential elements for one offense negates the existence of the essential elements for another offense of which the defendant also stands convicted." Id. Considering the factual scenario here and the wording of the information, the jury verdicts could have been legally inconsistent if the court had allowed the jury to consider both an attempt to commit assault in the second degree as the lesser included offense of attempted murder, and a separate count of assault in the second degree. The attempt to commit an act ceases once the act is committed.

We conclude that, under the state's long form information, it would have been improper to allow the jury to deliberate on two counts that could have resulted in inconsistent verdicts. We therefore conclude that the defendant was not entitled to a jury instruction on attempted assault in the second degree as a lesser included offense of attempted assault in the first degree, itself a lesser included offense of attempted murder.

The judgment is affirmed.

In this opinion the other judges concurred.