# STATE OF CONNECTICUT *v.* DANNY HINES
## (AC 24382)

Bishop, DiPentima and Gruendel, Js.

Argued February 7—officially released June 7, 2005

*Deborah G. Stevenson*, special public defender, for the appellant (defendant).

*Melissa L. Streeto*, deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, *Robert J. O'Brien*, supervisory assistant state's attorney, and *Roger S. Dobris*, senior assistant state's attorney, for the appellee (state).

*Opinion*

BISHOP, J. The defendant, Danny Hines, appeals from the judgment of conviction, rendered after a jury trial, of assault in the first degree in violation of General Statutes § 53a-59 (a) (5).[1] He also appeals from the

---

[1] General Statutes § 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when . . . (5) with intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of the discharge of a firearm."

judgments, rendered after a trial to the court, finding him guilty of violation of probation in contravention of General Statutes § 53a-32.[2] On appeal, the defendant claims: "The [trial] court improperly denied the [defendant's] motion for acquittal when the state conceded it could not prove that the [defendant] assaulted the victim, when the [defendant] was not charged with accessory liability, when the state failed to prove accessory liability, when the court improperly instructed the jury on accessory liability, and when the jury was misled by the court's instructions." From this statement, we glean that the defendant claims that (1) the evidence was insufficient to convict him as either an accessory or a principal, and, thus, the court improperly denied his motion for a judgment of acquittal, (2) the court improperly instructed the jury on accessory liability when the defendant was not charged in the information as an accessory and (3) the court's jury instruction on

[2] General Statutes § 53a-32 provides in relevant part: "(a) At any time during the period of probation or conditional discharge, the court or any judge thereof may issue a warrant for the arrest of a defendant for violation of any of the conditions of probation or conditional discharge . . . . Thereupon, or upon an arrest by warrant as herein provided, the court shall cause the defendant to be brought before it without unnecessary delay for a hearing on the violation charges. At such hearing the defendant shall be informed of the manner in which such defendant is alleged to have violated the conditions of such defendant's probation or conditional discharge, shall be advised by the court that such defendant has the right to retain counsel and, if indigent, shall be entitled to the services of the public defender, and shall have the right to cross-examine witnesses and to present evidence in such defendant's own behalf.

"(b) If such violation is established, the court may . . . (4) revoke the sentence of probation or conditional discharge. If such sentence is revoked, the court shall require the defendant to serve the sentence imposed or impose any lesser sentence. Any such lesser sentence may include a term of imprisonment, all or a portion of which may be suspended entirely or after a period set by the court, followed by a period of probation with such conditions as the court may establish. No such revocation shall be ordered, except upon consideration of the whole record and unless such violation is established by the introduction of reliable and probative evidence and by a preponderance of the evidence."

accessory liability confused the jury.[3] After analyzing the defendant's claims as we have reframed them, we affirm the judgments of the trial court.

The jury reasonably could have found the following facts. On the evening of June 13, 2001, as Raphael Chestnut and Mary Hartsfield were sitting on the porch of their home at 128 Read Street in New Haven, they noticed the defendant walking along Read Street in front of their home. The defendant left the area and then returned a few moments later riding a white bicycle in the street near the sidewalk closest to their home. As he rode by their house, he pointed a handgun and fired in the direction of Chestnut and Hartsfield. At about the same time, Chestnut and Hartsfield saw a second individual walking in the street in front of their home. After the defendant fired a gunshot from his handgun, the second individual also began shooting a handgun toward the porch. Chestnut was shot in the arm as he grabbed Hartsfield and dove toward the floor

---

[3] The defendant additionally claims that because the evidence was insufficient to convict him of assault in the first degree, the evidence was also insufficient to find that he violated his probation. Because we find that the evidence was sufficient to support the conviction of assault in the first degree, we need not review the claim that the finding of a violation of probation was improper. Moreover, the court held a separate hearing in which it found, by a preponderance of the evidence, that the conduct of the defendant in shooting at the victim violated the criminal law and, consequently, that he had violated a condition of his probation.

"[T]he purpose of a probation revocation hearing is to determine whether a defendant's conduct constituted an act sufficient to support a revocation of probation . . . rather than whether the defendant had, beyond a reasonable doubt, violated a criminal law. The proof of the conduct at the hearing need not be sufficient to sustain a violation of a criminal law. . . . In a probation violation proceeding, all that is required is enough to satisfy the court within its sound judicial discretion that the probationer has not met the terms of his probation." (Citation omitted; internal quotation marks omitted.) *State* v. *Breckenridge*, 66 Conn. App. 490, 500, 784 A.2d 1034, cert. denied, 259 Conn. 904, 789 A.2d 991 (2001). Thus, the court's finding, by a preponderance of the evidence, that the defendant assaulted the victim was sufficient to support the revocation of probation.

of the porch while covering his head with his right arm. Chestnut and Hartsfield heard a total of five or six gunshots, but they could not determine which gun fired the bullet that injured Chestnut. The defendant escaped on his bicycle while the second individual ran away.

Charles Gargano, an officer with the New Haven police department, quickly arrived at the scene. He found Hartsfield standing on the front porch and Chestnut lying on the porch grabbing his chest. Gargano observed that Chestnut had been shot in the upper right arm just above the elbow and noticed bullet holes through the front of the house. When Gargano approached, Hartsfield stated that the defendant was the perpetrator. She provided Gargano with a physical description of the defendant as well as his clothing and the bicycle. The police interviewed the defendant that evening, but did not arrest him at that time.

Prior to the incident, Hartsfield and Chestnut had spoken with the defendant and told him to stop selling drugs in front of their home. In response, the defendant stated that he owned the neighborhood and would sell drugs wherever he chose. He then threatened to blow their house "off the hinges."

In connection with the investigation of the incident, the police also questioned Dakema Conyers, Hartsfield's niece. At the time of the incident, Conyers lived next door to Chestnut and Hartsfield at 126 Read Street. When she initially was questioned, Conyers told the police that on the night of the shooting, she was on the porch with Hartsfield and Chestnut and saw the defendant ride by on a bicycle. She told the police that as the defendant passed in front of the house for the last time, she saw a gun in his hand and heard gunshots. Additionally, she told the police that she saw a second individual who also fired a handgun toward the house. At trial, Conyers withdrew most of the statement she

had given to the police, asserting that much of it was untrue. She testified that she actually was in her second floor apartment at the time of the shooting and that she heard what sounded like four or five gunshots coming from outside. She could not, however, identify the shooter from her vantage point. Nevertheless, she claimed that she did, in fact, see someone who generally matched the description of the defendant running from the direction of Chestnut's and Hartsfield's home.

The defendant was charged in an amended information with assault in the first degree. At the close of the state's case, the defendant made a motion for a judgment of acquittal, which the court denied. No interrogatories were submitted to the jury. On January 28, 2003, the defendant was convicted of assault in the first degree. Neither party moved for a jury poll. After the verdict, the defendant filed motions for a judgment of acquittal and for a new trial, which the court denied. On January 29, 2003, the court held a violation of probation hearing regarding two unrelated convictions that occurred in 1998 and found, by a fair preponderance of the evidence, that the defendant had violated a condition of probation in each of the two unrelated cases. On May 30, 2003, the court sentenced the defendant to twenty years incarceration to be served on the count of assault in the first degree. The court also revoked the defendant's probation, revoked the suspended sentence on both of the unrelated cases and committed the defendant to the custody of the commissioner of correction for a period of two years to be served for violation of probation. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant claims that the evidence adduced at trial was insufficient to prove, beyond a reasonable doubt, that he was guilty, either as an accessory or as

a principal, of assault in the first degree in violation of § 53a-59 (a) (5). Specifically, he claims that the court improperly denied his motion for a judgment of acquittal. We disagree.

"The standard of appellate review of a denial of a motion for a judgment of acquittal has been settled by judicial decision. . . . The issue to be determined is whether the jury could have reasonably concluded, from the facts established and the reasonable inferences which could be drawn from those facts, that the cumulative effect was to establish guilt beyond a reasonable doubt. . . . The facts and the reasonable inferences stemming from the facts must be given a construction most favorable to sustaining the jury's verdict." (Internal quotation marks omitted.) *State* v. *Vasquez*, 68 Conn. App. 194, 204, 792 A.2d 856 (2002).

We analyze the issue by setting forth each of the essential elements of § 53a-59 (a) (5) and by determining whether the state proved each element beyond a reasonable doubt. In undertaking this analysis, we are mindful that "although it is within the province of the jury to draw reasonable, logical inferences from the facts proven, they may not resort to speculation and conjecture. . . . [I]n viewing evidence which could yield contrary inferences, the jury is not barred from drawing those inferences consistent with guilt and is not required to draw only those inferences consistent with innocence. The rule is that the jury's function is to draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical." (Citation omitted; internal quotation marks omitted.) Id.

To sustain the conviction under § 53a-59 (a) (5), the state must demonstrate with proof beyond a reasonable doubt that the defendant (1) intended to cause physical injury to another person, (2) caused such injury to such

person or to a third person and (3) did so by means of the discharge of a firearm. In the present case, although the state charged the defendant as a principal actor under the statute, the court properly instructed the jury that it could find the defendant guilty under a theory of accessorial liability pursuant to General Statutes § 53a-8. See part II.

General Statutes § 53a-8 (a) provides: "A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender." "Since under our law both principals and accessories are treated as principals . . . if the evidence, taken in the light most favorable to sustaining the verdict, establishes that [the defendant] committed the [crime] charged or did some act which forms . . . a part thereof, or directly or indirectly counseled or procured any persons to commit the offenses or do any act forming a part thereof, then the [conviction] must stand." (Internal quotation marks omitted.) *State* v. *Conde*, 67 Conn. App. 474, 484, 787 A.2d 571 (2001), cert. denied, 259 Conn. 927, 793 A.2d 251 (2002). The accessory statute establishes an alternative means by which a particular crime may be committed. *State* v. *Delgado*, 247 Conn. 616, 622, 725 A.2d 306 (1999). Therefore, for the purposes of determining criminal liability, it is of no consequence whether one is labeled an accessory or a principal. *State* v. *Bagley*, 35 Conn. App. 138, 142, 644 A.2d 386, cert. denied, 231 Conn. 913, 648 A.2d 157 (1994).

Accordingly, the state did not need to prove that the defendant, acting as an accessory, actually inflicted the

victim's injuries.[4] To the contrary, the state needed to prove that (1) the defendant intended to cause physical injury to another person, (2) the defendant *either* caused such physical injury to such person *or* solicited, requested, commanded, importuned or intentionally aided another person to cause such physical injury and (3) such injury was inflicted by a discharge of a firearm. See *State* v. *Vasquez*, supra, 68 Conn. App. 205.

Reviewing the evidence in the light most favorable to sustaining the verdict, we conclude that there was sufficient evidence to convict the defendant of assault in the first degree, in the very least, as an accessory. First, the evidence adduced at trial was sufficient to establish that the defendant solicited, requested, commanded, importuned or intentionally aided another per-

---

[4] The defendant also claims that the state conceded during closing arguments to the jury that it could not prove that he committed the crime of assault. The record belies that assertion. The prosecutor argued to the jury that it "[has] not heard any evidence whatsoever to say that it was definitely the gun that the defendant had that fired the shot that struck and injured Mr. Chestnut, and that's because I can't prove to you that that is exactly what happened because you heard testimony that there were two people out there that night shooting. . . .

"I can't prove to you that that man over there absolutely, positively shot Mr. Raphael Chestnut. What I've tried to prove is that there were two people and that he was one of them. I can't tell you whose gun fired the [gunshot] that struck Mr. Chestnut in the elbow causing him physical injury or pain, but I think that the evidence, if you examine it carefully, will show that the defendant was one of those people, and if you listen to Judge Licari's charge following the conclusion of the lawyers' arguments, you'll understand the theory of the state's case, that in fact, two were acting in concert with one another to accomplish the result, which was that Mr. Chestnut was shot, and I just wanted to make sure that you understood that I wasn't suggesting that the bullet [that struck] Mr. Chestnut came from the defendant's gun because I can't prove that."

The state never conceded that it could not prove that the defendant committed the crime of assault in the first degree as an accessory. Because the jury was not polled and we conclude that there was sufficient evidence to convict the defendant of assault in the first degree as an accessory, it is of no consequence that the state, in its argument to the jury, asserted that the evidence did not show which individual's gun discharged the bullet that injured Chestnut.

son to cause physical injury to a third person. Chestnut and Hartsfield testified that they were quite familiar with the defendant, as he lived on their street and they had interacted with him in the neighborhood multiple times before the incident. They recalled seeing him a short while before the shooting, wearing a white T-shirt and a blue bandana, suspiciously pacing back and forth in front of their house. They testified that he subsequently left the area and returned on a bicycle. They recalled that the defendant rode on his bicycle in front their home while pointing a gun in their direction. They also testified that they saw a second individual at about the same time and recalled that he also was pointing a handgun in their direction. Chestnut and Hartsfield recalled that they heard five or six gunshots and, in an attempt to avoid the bullets, dove to the porch floor. Chestnut and Hartsfield recalled that a bullet hit Chestnut's arm above his elbow. Additionally, Hartsfield and Chestnut testified that about one month prior to the shooting, they had told the defendant to stop selling drugs in front of their home. According to Hartsfield and Chestnut, the defendant responded by threatening that he would blow their house "off the hinges."

Second, the jury reasonably could have found beyond a reasonable doubt, on the basis of the previously mentioned testimony as well as other evidence adduced at trial, that the defendant intended to cause physical injury to another person. The jury heard evidence that the defendant paced in front of Chestnut's and Hartsfield's home, left for a period of time and then returned pointing a handgun in their direction. The jury also heard evidence that the defendant fired the gun in their direction and that, prior to the incident, he had threatened both Chestnut and Hartsfield.

"Intent is generally proven by circumstantial evidence because direct evidence of the accused's state of mind is rarely available. . . . Therefore, intent is

often inferred from conduct . . . and from the cumulative effect of the circumstantial evidence and the rational inferences drawn therefrom. . . . It is axiomatic that a factfinder may infer an intent to cause . . . physical injury from circumstantial evidence such as the type of weapon used, the manner in which it was used, the type of wound inflicted and the events leading up to and immediately following the incident. . . .

"The state did not need to prove that the defendant actually caused . . . physical injury to the victim. It is enough for the state to prove that the defendant, acting with the intent to cause . . . injury to [the victim], solicited, requested, commanded, importuned or intentionally aided another person to cause . . . physical injury to [the victim] by means of a dangerous weapon." (Citation omitted; internal quotation marks omitted.) Id., 207–208.

In sum, the testimony elicited during trial, if credited by the jury, amply established that the defendant was one of the shooters. Chestnut suffered physical injury as result of the discharge of a firearm. The defendant, along with another person, was present at the time of the crime and in possession of a handgun, which he fired in the direction of Chestnut and Hartsfield. From this evidence, it was reasonable for the jury to infer from the actions of the assailants that they both intended to cause physical injury to Chestnut, that one of them did cause physical injury to Chestnut through the discharge of a firearm and that the defendant, at the very least, intentionally aided in the commission of the crime. Because our statutes and case law treat both principals and accessories as principals, the conviction will withstand appellate scrutiny if the evidence establishes that the defendant solicited, requested, commanded, importuned or intentionally aided another person to cause such physical injury. See State v. Conde, supra, 67 Conn. App. 484. Although the evidence may not have revealed

whether it was the defendant or the second shooter who fired the gunshot that injured Chestnut, the jury reasonably could have determined that there was sufficient concert of action between the defendant and the second shooter to convict the defendant as an accessory.

Last, it is indisputable that Chestnut's injuries were caused by a bullet discharged from a firearm. The evidence overwhelmingly showed that the defendant and the second shooter used firearms in their attack. The police testified that they observed Chestnut's gunshot wound as well as bullet holes in the house. Hartsfield's and Chestnut's eyewitness testimony concerning Chestnut's injuries also support a finding in this regard.[5] After carefully reviewing the evidence adduced at trial, we conclude that there was ample evidence, both direct and circumstantial, to demonstrate that the defendant was liable, in the very least as an accessory, for the crime of assault in the first degree.

## II

The defendant next claims that the state was not entitled to an instruction on accessorial liability because he was not charged as an accessory in the information, and the state's evidence did not show that the defendant acted as an accessory. The defendant

[5] The defendant additionally maintains that the evidence was insufficient to prove that he committed assault in the first degree because the testimonial evidence regarding his conduct on the day of the incident was contradictory. In support of his claim, the defendant rightly points out that Conyers' initial statement to the police was revealed, in the main, to have been untrue. Although Conyers may have lied during her initial statement to the police, she gave fresh testimony at trial that the jury was free to credit.

"This court does not retry the case or evaluate the credibility of the witnesses. . . . The credibility of witnesses is a matter to be resolved solely by the jury. . . . This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict." (Citations omitted; internal quotation marks omitted.) *State* v. *Hart*, 198 Conn. 424, 427, 503 A.2d 588 (1986).

contends that in delivering the instruction on accessorial liability, the court violated his due process rights to notice of the charges against him and to a fair trial. We are not persuaded.

The defendant did not raise his claim in the trial court and did not object at trial to the court's instruction on accessorial liability. The defendant contends, however, that the claim is reviewable under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[6] We agree that the record is adequate for review and that the defendant raises a constitutional claim. We therefore turn to the third prong of *Golding*, which is dispositive.

The defendant argues, and the record reflects, that the state charged the defendant solely as a principal in its substituted information and that the court accepted his not guilty plea as to those charges. The state first discussed the defendant's guilt as an accessory to assault in the first degree when it opposed his motion for a judgment of acquittal at the close of the state's case. The defendant argues that the court's charge deprived him of his right to present a defense, as guaranteed by the sixth amendment to the United States constitution, which is made applicable to the states through the fourteenth amendment, and by the due process clause of article first, § 8, of the constitution of Connecticut. The defendant likewise contends that because the state conceded during closing arguments to the jury that it could not prove who fired the bullet that injured Chestnut, it admitted that it could not prove that the

---

[6] In *Golding*, our Supreme Court held that "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

defendant committed assault in the first degree. According to the defendant, the court, therefore, should not have given an instruction on accessorial liability.

A defendant has a constitutional right "to be informed of the nature and cause of the charges against him with sufficient precision to enable him to meet them at trial." (Internal quotation marks omitted.) *State* v. *Spigarolo*, 210 Conn. 359, 381, 556 A.2d 112, cert. denied, 493 U.S. 933, 110 S. Ct. 322, 107 L. Ed. 2d 312 (1989). "[D]ue process considerations preclude a court from instructing a jury that it may convict a defendant under a theory of accessorial liability in certain circumstances. Inherent in the constitutional mandate that a defendant be advised of the 'nature and cause' of the accusations against him is that the defendant be on notice of the nature of the state's prosecution." *State* v. *Vasquez*, supra, 68 Conn. App. 215.

"It is [also] well established in this state that there is no crime of being an accessory. . . . Rather, the accessory statute merely provides an alternative theory under which liability for the underlying substantive crime may be proved. . . . There is no practical significance in the labels 'accessory' and 'principal' in determining criminal liability. . . . A defendant may be convicted as an accessory, even if charged only as a principal, as long as the evidence presented at trial was sufficient to establish accessorial conduct." (Citations omitted.) *State* v. *Bagley*, supra, 35 Conn. App. 142. "The state [therefore] cannot present its case on the theory of principal liability and then, without providing notice to the defendant, seek near the conclusion of the trial to convict the defendant under a theory of accessorial liability." *State* v. *Vasquez*, supra, 68 Conn. App. 215.

This court previously rejected a similar claim in *State* v. *Hopkins*, 25 Conn. App. 565, 595 A.2d 911, cert.

denied, 220 Conn. 921, 597 A.2d 342 (1991), that the trial court incorrectly gave an accessory instruction to the jury where the defendant had not been specifically charged as an accessory. *Hopkins* held that the court properly instructed the jury on accessorial liability because, inter alia, the defendant had not submitted a request for a bill of particulars after the state filed a substitute information, and the character of the evidence adduced during the state's case-in-chief should have put the defendant on notice of the possibility that he could have been convicted as an accessory. Id., 568–70. In *State* v. *Williams*, 220 Conn. 385, 390, 599 A.2d 1053 (1991), our Supreme Court likewise rejected a claim that the trial court improperly instructed the jury on the principle of accessorial liability because, inter alia, "the defendant . . . was specifically put on notice . . . prior to beginning his defense, that the issue of accessorial liability was . . . in the case."

In the case at hand, the state adduced evidence in its case-in-chief that two people had fired gunshots at Chestnut and Hartsfield. This evidence raised the possibility of principal or accessorial liability for each shooter's participation. See *State* v. *Bagley*, supra, 35 Conn. App. 143. The record also reflects that the defendant did not submit a request for a bill of particulars. Finally, we note that the prosecutor specifically asserted that the state was proceeding on the principle of accessorial liability before the defense began its case. Considering the nature of the state's evidence as to the commission of the crime and the fact that the defendant knew prior to presenting his defense that the state intended to prosecute under this theory of liability, the defendant had sufficient notice that he risked conviction as an accessory.

For these reasons, we conclude that the defendant has failed to demonstrate that a constitutional violation

clearly exists that deprived him of fair trial. Accordingly, his claim fails under *Golding*'s third prong.

## III

Last, the defendant claims that the court's instruction on accessorial liability was improper and led to jury confusion. We disagree.

Preliminarily, we note that the defendant neither filed a request to charge nor objected to the jury instructions that ultimately were given by the court. "It is well established that [t]his court is not bound to review claims of error in jury instructions if the party raising the claim neither submitted a written request to charge nor excepted to the charge given by the trial court." (Internal quotation marks omitted.) *State* v. *Romero*, 269 Conn. 481, 487, 849 A.2d 760 (2004). Accordingly, the defendant now seeks *Golding* review of his claim. We will review the defendant's claim because the record is adequate for our review, and the claim that the court improperly instructed the jury as to an element of a charged offense is of constitutional dimension. See *State* v. *DeJesus*, 260 Conn. 466, 472–73, 797 A.2d 1101 (2002). We conclude, however, that the defendant's claim fails *Golding*'s third prong.

The following facts are necessary for our resolution of the defendant's claim. After the court instructed the jury, the jurors retired to the jury room to deliberate on the charges against the defendant. During deliberations, the jury sent a note to the court requesting a clarification of the specific charges and indicating that it was confused between principal and accessorial liability. After consultation with counsel, the court indicated its intention to reiterate the charges to the jury on principal and accessorial liability. The jurors then were brought back into the courtroom, and the court explained to them that their note did not elucidate the specific nature of their confusion and that, in the absence of greater

specificity, the court would simply reread its charge on principal and accessory liability. The court also instructed the jury that if it preferred, it could also go back to the jury room and draft a note indicating more specifically its concern. The jury retired to the jury room and drafted a second note. The second note read: "Re: the charge, do we have to make a decision as to whether the defendant acted as a princip[al] or accessory in our verdict?" In response, the court read again a portion of the charge regarding principal and accessory liability. The court instructed the jury: "It is not necessary that you unanimously agree that the defendant committed a crime of assault in the first degree as a principal, and it is not necessary that you unanimously agree that the defendant committed the crime of assault in the first degree as an accessory. It is necessary that you unanimously agree that the defendant committed the crime of assault in the first degree either as the principal or as an accessory." The court additionally instructed the jury to resubmit an additional question to the court if it required further clarification during deliberations. When the jury informed the court in a note that it had reached a verdict, the court inquired whether it needed any further clarification with respect to principal and accessory liability. The jurors responded that they needed no further clarification. The court then stated: "I just want the record to be clear. I believe, based on what you have said here, that you do not need any additional clarification on principal or accessory liability; is that correct? All right. You're all nodding yes, and I also take this note to mean that you do not want to hear any additional testimony; is that correct?" The jury found the defendant guilty of assault in the first degree.

"Under prong three of *Golding*, a challenged jury instruction constitutes a clear constitutional violation that [unmistakably] deprives a defendant of a fair trial

if it is found reasonably possible that the jury was misled by the court's instruction. . . . The standard of review for constitutional claims of improper jury instructions is well settled. In determining whether it was . . . reasonably possible that the jury was misled by the trial court's instructions, the charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding [it] to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The test to be applied . . . is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper." (Citation omitted; internal quotation marks omitted.) *State* v. *Giordano-Lanza*, 83 Conn. App. 811, 820–21, 851 A.2d 397, cert. granted on other grounds, 271 Conn. 911, 859 A.2d 572 (2004).

The defendant argues that the charge, as given, confused the jury because the court's instructions essentially told the jury that it could not convict him if it found that he did not cause the injury to the victim and also that it could convict him if it found that he did not cause the injury to the victim. The defendant challenges a lengthy portion of the court's instruction regarding accessory liability and the difference between accessory liability and principal liability. In particular, he challenges, inter alia, the following portion of the charge to the jury: "You need not in your deliberations decide who fired the gunshot that injured Raphael Chestnut . . . ." The defendant additionally argues that because the jury sent a note to the court indicating that it needed a clarification of the charge and was confused between

principal and accessorial liability, the jury must have been confused by the court's instructions.

As we concluded in part II, it was proper for the court to instruct the jury on accessorial liability as well as principal liability. Therefore, it was not inherently improper to instruct the jury that it could convict the defendant on either theory. As noted, in order to establish accessorial liability, the state must prove beyond a reasonable doubt that the accused had the intent to aid the principal and that in doing so he intended to commit the substantive offense with which he is charged. Contrary to the defendant's assertion, the court properly informed the jury that the defendant could not be convicted as a principal unless the jury found that the defendant actually shot the victim, but he could nevertheless be convicted as an accessory if the jury determined that the state had proven the elements necessary for a finding of accessorial liability. Presenting alternative theories of liability that properly apply to the case at hand is not inherently misleading. Our review of the record indicates that the court's instruction properly included all of the elements of accessorial liability as well as principal liability.

Moreover, when the jury asked for further clarification of the definitions of accessorial liability and principal liability, the court reread its instruction and gave the jury a copy of its instruction. The court further instructed the jury that if it had any further questions, it should submit a request to answer a specific question. The jury was aware of its right to request supplemental instructions if required and, after the court reinstructed the jury, it did not request further clarification. Absent a request by the jury seeking further instruction on the concepts of principal liability and accessorial liability or a clear indication that the jury was confused as to the law relating to the alternative theories of liability, we are unpersuaded by the defendant's claim that the

court's supplemental clarification of its charge caused the jurors to become confused. To the contrary, we conclude that the court's instruction, taken as a whole, was sufficient to guide the jury to a clear understanding of the offense charged and made clear to the jurors that they could convict the defendant of assault either as a principal or as an accessory. The court's instructions led the jury to a reasonably clear comprehension of the issues presented for its determination and were suited to guide the jury in the determination of those issues. Because the court's charge to the jury was fully accurate and legally correct, it is not reasonably possible that the jury was misled. The defendant's claim of error in the instruction is, therefore, unfounded. Accordingly, no constitutional violation clearly exists, and the defendant's challenge to the court's instructions on accessorial and principal liability fails under the third prong of *Golding*.

The judgments are affirmed.

In this opinion the other judges concurred.