STATE OF CONNECTICUT *v.* ANGEL LLERA, JR.
(AC 30421)

Flynn, C. J., and Robinson and Berdon, Js.

---

Argued February 6—officially released May 12, 2009

*Gary A. Mastronardi*, for the appellant (defendant).

*Adam E. Mattei*, special deputy assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, state's attorney, and *C. Robert Satti, Jr.*, senior assistant state's attorney, for the appellee (state).

*Opinion*

BERDON, J. The defendant, Angel Llera, Jr., appeals from the judgment of conviction, rendered after a jury trial, of one count of murder with a firearm, as a principal or an accessory,[1] in violation of General Statutes

---

[1] "Since under our law both principals and accessories are treated as principals . . . if the evidence, taken in the light most favorable to sustaining the verdict, establishes that [the defendant] committed the [crime] charged or did some act which forms . . . a part thereof, or directly or indirectly counseled or procured any persons to commit the offenses or do any act forming a part thereof, then the [conviction] must stand." (Internal

§§ 53a-54a (a) and 53-202k, three counts of assault in the first degree with a firearm, as a principal or an accessory, in violation of General Statutes §§ 53a-59 (a) (5) and 53-202k, and one count of carrying a pistol without a permit in violation of General Statutes § 29-35 (a). The sole issue in this appeal is whether the trial court abused its discretion when it permitted a police officer to testify that at the time of the defendant's arrest, the defendant had in his possession a .40 caliber Glock[2] handgun, and, if so, whether the testimony was harmful. We conclude that the court improperly admitted the testimony about the Glock but that the defendant has not shown that the error was harmful. Accordingly, we affirm the judgment of the trial court.

The following facts are relevant to the defendant's appeal. In the early morning of April 16, 2006, the defendant and Samuel Walker were at Club Novella in Bridgeport. Also at Club Novella were Eric Ortiz, Tyrelle Noblin, Timothy White and Angela Tucker. Noblin testified that he observed the defendant hand a gun to Walker immediately before Walker fired several gunshots. White, Tucker and Noblin were shot and injured, and Ortiz was shot and killed. The bullets were fired from the same nine millimeter, semiautomatic Luger[3] handgun.

On April 19, 2006, the Bridgeport police arrested an individual named Roosevelt Jefferson on an unrelated narcotics charge. Jefferson had spoken with the defendant in the defendant's vehicle two days after the shooting, and he testified against the defendant, hoping to

---

quotation marks omitted.) *State* v. *Hines*, 89 Conn. App. 440, 447, 873 A.2d 1042, cert. denied, 275 Conn. 904, 882 A.2d 678 (2005). Therefore, the state is not required to prove whether the defendant was a principal or an accessory. See id.

[2] Glock is a brand name. The defendant was not on trial for possessing this gun.

[3] Luger is a brand name.

receive leniency when he became eligible for parole. Jefferson testified that he saw the defendant with a nine millimeter semiautomatic Luger. He also testified that the defendant went everywhere with "that type of gun." While Jefferson was in the car, the defendant removed the clip from the nine millimeter Luger and placed the Luger in a console behind his car radio. During their conversation, the defendant told Jefferson that he, not Walker, had shot Ortiz in the face with his nine millimeter Luger because of a gang related conflict and that he carried the gun because of an ongoing conflict.[4] The defendant also told Jefferson that he was going to the housing projects to speak with a female named Smurf, who was spreading rumors about him.

The Bridgeport police apprehended the defendant several days later while he was driving his car in the Marina Village housing project. In the defendant's car, the police found the blood of White and Ortiz. The defendant told the police that he was at Marina Village to speak with a woman named Smurf in regard to rumors that she was spreading about his involvement in the Club Novella shooting. Over the defendant's

---

[4] At trial the following colloquy occurred between the prosecutor and Jefferson:

"Q. Okay. Did [the defendant] indicate the reason why that occurred in the club?

"A. They had beef. They had a personal beef.
* * *

"Q. And would you please speak up and tell us what the defendant told you the reason for the beef was?

"A. They had ongoing beef. They had a beef with this other gang.
* * *

"Q. And did . . . you tell the police why [the defendant] told you why he had the gun?

"A. He got [a] beef.

"Q. Excuse me?

"A. He got [a] beef.

"The Court: He has a beef. Is that what you said?

"A. Beef. Yes, sir.

"The Court: Beef. All right."

objection, Sergeant John Cummings of the Bridgeport police department testified that when he apprehended the defendant, he found in a compartment behind the radio of the defendant's car a .40 caliber Glock with an extended clip. Cummings also testified that the Glock was incapable of firing a nine millimeter bullet.

The jury found the defendant guilty on all counts. The sole issue in this appeal is whether the court improperly permitted Cummings to testify about the Glock. "Evidence as to articles found in the possession of an accused person subsequent to the time of the commission of a crime for which he is being tried is admissible only if it tends to establish a fact in issue or to corroborate other direct evidence in the case . . . . The reason is analogous to that applicable to evidence of other crimes committed by a defendant but unrelated to the offense under investigation. . . . Although such evidence may be admissible . . . the general rule excludes the evidence so as to avoid the danger of prejudice against the defendant . . . . The trial judge must determine, in the exercise of judicial discretion, that the probative value of the other crimes evidence outweighs its prejudicial tendency. . . .

"Discretion, however, imports something more than leeway in decision-making. . . . Discretion means a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice. In a plain case this discretion has no office to perform, and its exercise is limited to doubtful cases, where an impartial mind hesitates. . . . Put another way, if the issue to be proved is competent but can just as well be demonstrated by other evidence, or if the evidence is of but slight weight or importance upon that point, a trial judge is justified in excluding the evidence entirely . . . . It should be recognized . . . that the discretion invested in the trial court is not a license to

depart from the principle that evidence of other crimes, having no substantial relevancy except to ground the inference that the accused is a bad person and hence probably committed this crime, must be excluded." (Citations omitted; internal quotation marks omitted.) *State* v. *Onofrio*, 179 Conn. 23, 28–30, 425 A.2d 560 (1979).

The court permitted Cummings to testify about the Glock to corroborate Jefferson's testimony and for the purpose of establishing the defendant's motive and identity. The court found that the probative value of Cummings' testimony outweighed the risk of unfair prejudice because Jefferson's testimony was crucial to the state's case and the defense had severely impeached it. The court also provided the jury with an instruction limiting the purpose for which it could consider the testimony about the Glock.[5]

On appeal, the defendant argues that the court improperly permitted Cummings' testimony about the Glock because it was not relevant to any of the exceptions to the general rule precluding the admission of articles found with a defendant subsequent to a crime that have no relation to that crime. See Conn. Code Evid. § 4-5 (b); see also *State* v. *Onofrio*, supra, 179 Conn. 28. The defendant specifically argues that the Glock did not corroborate Jefferson's testimony, establish the defendant's motive or identify the defendant as a participant in the shooting. The defendant also argues

---

[5] The court instructed the jury that it "ha[d] just heard testimony about the seizure of a .40 caliber Glock handgun in a Ford Taurus automobile that had been operated by the defendant. That evidence is admitted strictly for the purpose to corroborate other prosecution testimony, crucial state's evidence that you may have heard prior to Officer Cummings testifying about this .40 caliber Glock handgun. So, that evidence may be considered by you with regard only to the corroboration of prior testimony that you heard and for the purposes of establishing the identity or motive, the identity of someone involved in the underlying crime or the motive for committing that crime. So, you have been so advised."

that if the testimony about the Glock had a proper purpose, its probative value was outweighed by its prejudicial effect.

Our Supreme Court has held that "the prosecution is not permitted to wholesale proof into evidence under the guise of corroboration purposes. . . . Other crimes evidence . . . is only admissible for corroborative purposes, if the corroboration is direct and the matter to be corroborated is significant." (Citation omitted; internal quotation marks omitted.) *State* v. *Mooney*, 218 Conn. 85, 128–29, 588 A.2d 145, cert. denied, 502 U.S. 919, 112 S. Ct. 330, 116 L. Ed. 270 (1991). The state first argues that evidence of the Glock was admissible because it corroborated Jefferson's statements that (1) the defendant's car had a hidden compartment, (2) the defendant was looking for an individual named Smurf who lived in the housing projects, and (3) the defendant's two guns bore a distinctive feature, namely, an extended clip. The state also argues that the testimony about the Glock directly corroborated Jefferson's testimony because "the defendant's possession of a weapon with a distinctive feature in a secret compartment reinforced Jefferson's testimony that he and the defendant actually had a conversation in the defendant's car."

In these respects, the state's arguments are without merit. The existence of the Glock did not directly corroborate that Jefferson and the defendant had a conversation because Jefferson's testimony did not mention the Glock. Furthermore, the state corroborated the existence of this conversation with evidence that was much more direct and probative of its existence and much less prejudicial to the defendant. The state corroborated Jefferson's testimony about the compartment in the defendant's vehicle with Cummings' testimony about the compartment and by admitting into evidence two photographs of it. The state corroborated Jefferson's

testimony that the defendant told him that he was look-
ing for an individual named Smurf with testimony from
the Bridgeport police that when they arrested the defen-
dant, he told them that he was looking for Smurf
because she was spreading rumors about his involve-
ment in the Club Novella shooting. Moreover, the exis-
tence of the Glock was irrelevant to the existence of
the nine millimeter Luger, except for the improper pur-
pose of showing that the defendant had a propensity
for carrying a gun. It is undisputed that the Glock was
not the gun that Jefferson saw. Jefferson also did not
testify that the defendant usually carried a gun with a
particular type of clip. He testified that the defendant
had a nine millimeter Luger and that he saw the defen-
dant everywhere with "that type of gun." Therefore,
evidence of the Glock was not admissible to prove that
the defendant and Jefferson had a conversation in the
defendant's car.

The state next argues that Cummings' testimony
about the Glock "lent credence to the details of Jeffer-
son's interaction with the defendant relating to identity
and motive." The state points out that Jefferson testified
as to the defendant's identity as the shooter and that
his motive was gang related and argues that "since
the testimony about the Glock supported Jefferson's
testimony in general, it tended to substantiate these
details." This argument also is without merit. Our
Supreme Court has held that "[o]ther crimes evidence
. . . is only admissible for corroborative purposes, if
the corroboration is *direct* and the matter to be corrobo-
rated is *significant.*" (Emphasis added; internal quota-
tion marks omitted.) *State* v. *Mooney,* supra, 218 Conn.
129. This rule would be meaningless if it was satisfied
merely because evidence of another crime had a *general
tendency* to corroborate the testimony of a witness who
coincidentally testified about the defendant's motive
and identity. We conclude, therefore, that the court

improperly permitted Cummings to testify about the Glock.

Having determined that the court improperly permitted Cummings to testify about the Glock, we must determine whether the testimony was harmful. When, as here, an error is not constitutional in nature, the burden is on the defendant to prove that it is more probable than not that the error affected the result of the trial. *State* v. *Coleman*, 35 Conn. App. 279, 288, 646 A.2d 213, cert. denied, 231 Conn. 928, 648 A.2d 879 (1994).

The defendant argues that the improper admission of the testimony about the Glock was harmful because it was wholly irrelevant to the crimes charged, it unduly aroused the hostilities of the jury and the evidence against the defendant was weak. We are not persuaded. Cummings' testimony about the Glock "was not the type of evidence that [would] have a tendency to excite the passions, awaken the sympathy, or influence the judgment of the jury . . . ." (Internal quotation marks omitted.) Id. It was limited to a brief description of the Glock, and it "was not inflammatory so as to lead a jury to infer that the defendant was a violent person . . . ." Id. Moreover, the jury never saw the Glock because it was not admitted into evidence. Compare id., 289 (testimony about knives in defendant's possession harmless) with *State* v. *Girolamo*, 197 Conn. 201, 208, 496 A.2d 948 (1985) (sight of deadly weapons tends to overwhelm reason and to associate accused with crime without sufficient evidence). The court also instructed the jury that it could not consider Cummings' testimony to prove the defendant's bad character or criminal tendencies. See *State* v. *Hilton*, 45 Conn. App. 207, 219–20, 694 A.2d 830 (jury instruction mitigates prejudicial impact of evidence), cert. denied, 243 Conn. 925, 701 A.2d 659 (1997), cert. denied, 522 U.S. 1134, 118 S. Ct. 1091, 140 L. Ed. 2d 147 (1998).

We also disagree with the defendant that the evidence against him was weak. In the defendant's car, the police found the blood of two of the victims. Noblin testified that shortly before the shooting, he saw the defendant hand the murder weapon to Walker. Jefferson testified that the defendant admitted his involvement in the shooting, although he testified that the defendant admitted to a version of the event different from what Noblin described. Jefferson also testified that days after the shooting, he saw the defendant with a nine millimeter Luger, the same type of gun that was used in the shooting. In this regard, the jury would have heard testimony that the defendant had possessed a gun even if the court had not permitted Cummings to testify about the Glock. In light of the strength of the state's case, the nature of the improper testimony and the court's limiting instruction, we conclude that the defendant has failed to meet his burden of proving that the error was harmful.

The judgment is affirmed.

In this opinion the other judges concurred.